470 So.2d 339 (1985)
Janssen L. CASEY
v.
PROPRIETORS LIFE ASSURANCE COMPANY.
No. 85-CA-16.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
Donald F. deBoisblanc, Catherine Leary, New Orleans, for Janssen L. Casey, plaintiff-appellee.
W. Paul Andersson, Hammett, Leake & Hammett, New Orleans, for Proprietors Life Assur. Co., defendant-appellant.
Before BOUTALL, CHEHARDY and DUFRESNE, JJ.
BOUTALL, Judge.
This case arises from the denial of a claim for medical insurance benefits. From a judgment in favor of the plaintiff, the defendant has appealed.
Janssen L. Casey was insured under a group comprehensive major medical plan written by Proprietors Life Assurance Company and bearing an effective date of July 1, 1982. He was hospitalized for diagnostic study on August 1, 1982 following an episode on July 11, 1982 in which he had abdominal cramping and passed out. While being prepared for a barium enema *340 at the hospital he passed out again. He was wearing a 24-hour Holter monitor at the time, which when scanned revealed that his heart had stopped beating for a period of 30 seconds, coincidental with his having abdominal cramps and passing out. A pacemaker was inserted and he was released from the hospital on August 10. He presented a claim for $12,432.80 in medical and hospital bills to the insurer who rejected it on grounds of a policy exclusion from coverage for pre-existing conditions.
The pertinent section of the policy reads as follows:
"PRE-EXISTING CONDITIONS
"Pre-existing conditions are covered immediately with the following exceptions:
"Any injury or sickness for which the covered person has had treatment or incurred expenses 90 days before the effective date of these benefits will be covered by the satisfaction of one of the following conditions:
"A. Completing 180 consecutive days ending while his insurance is in effect during which no expenses were incurred for that injury or sickness or,
"B. The expiration of a one-year period of being covered hereunder for Major Medical Benefits."
The insurance company refused payment contending Casey had been treated by a physician for a pre-existing condition on April 27, 1982 and was not able to fulfill the conditions of either "A" or "B." Casey had been examined by his physician in April for a regular checkup during which he reported having had diarrhea and abdominal cramps for several days.
Trial resulted in a judgment awarding the plaintiff $11,432.80[1] in medical expenses. The judgment further decreed that the insurer had arbitrarily and capriciously refused to pay and awarded a penalty of $11,432.80 and attorney's fees of $2,000, together with legal interest and costs. The insurer appealed, and the plaintiff answered the appeal.
The issues brought by the insurer are whether the court correctly found that the plaintiff's claim was not excluded from coverage as a pre-existing condition and whether penalties and attorney's fees should have been awarded. The plaintiff asks for an increase in attorney's fees to cover his services in the appeal.
We state at the outset that the courts impose a strict burden on the insurer to prove that an exclusionary clause is applicable and, in the case of a health policy, that the alleged pre-existing condition did in fact predate the effective date of the policy. Estate of Borer v. Louisiana Health Service, 431 So.2d 49 (La.App. 1st Cir.1983).
In the case before us the trial court had to decide whether Casey was treated for the same illness on April 27, 1982, within 90 days of the policy date, as that for which he was treated in the hospital in August, 1982. The appellants argue that because Casey had experienced abdominal cramps and syncope (passing out) in 1977 and 1979, the abdominal cramps and diarrhea reported on April 27, 1982 were yet another manifestation of the July, 1982 episode of cramps and syncope that led to his hospitalization and of the August episode when the cardiac condition was detected. The events of 1977 and 1979 are not determinative of the issue here for under the terms of the policy the only period of time to be considered is the 90 days prior to the effective date, July 1, 1982.
At trial, Casey testified that his April 27 appointment with his long time physician, Dr. Edward E. Thornhill, had been prescheduled as a regular checkup but that he had a virus with stomach cramps and diarrhea at the time. Dr. Thornhill testified that on that day Casey reported having felt bad for four or five days with diarrhea and cramps but that there was no loss of consciousness. He prescribed no medication other than a change in the dosage of Casey's *341 regular blood pressure medicine. The physical examination revealed nothing abnormal other than a small right varicocele that Casey had had before.
The following excerpts of Dr. Thornhill's testimony at trial pertain to the relationship of the April symptoms to the cardiac condition:
"Q. Now, back to April 27th '82, is there any connection betweenwas anything diagnosed, any connection betweenany discovered then, that had any relationship to do with his hospitalization of August of '82?
"A. There's no way I can directly connect them."
* * * * * *
"Q. Anyway Mr. Casey would have known during April, May or even June of '82 that he had problems that would've necessitated a hospitalization on July 12, '82?
"A. No.
"Q. Okay. Is there any way you, as a physician, would've required a hospitalization subsequently for the insertion of a pacemaker?
"A. There's no way I could've known that."
* * * * * *
"Q. Is is possible that this same condition could've been diagnosed prior to the hospital visit?
"A. I don't know.
"Q. You don't know, `Yes', or you don't know, `No'?
"A. I don't know the answer to the question."
In response to further questions, Dr. Thornhill said:
"I have stated multiple places throughout my record, he has had lots of diarrhea and cramps without passing out, too.... The correlation of those two symptoms is not necessarily a regular thing so I don't know the answer to that question.... He's the only patient I have with that condition."
The insurer here called no medical witnesses to rebut Dr. Thornhill's testimony. The letter from Barbara Mormile, Claims Manager of Proprietors Life Assurance Company, to the Commissioner of Insurance for Louisiana, submits the hospital discharge summary and hospital records, but does not indicate that a medical expert had reviewed Casey's records. As the testimony of the plaintiff and of his physician was unrebutted we believe that the symptoms exhibited during the April illness were reasonably attributable to a virus and not to a heart attack. Accordingly, we conclude that the insurer failed to carry its burden of proving the applicability of the policy exclusion of a pre-existing condition for which the insured was treated within 90 days before the effective date of the policy.
We turn now to the issue of penalties for the insurer's arbitrary and capricious failure to make payment. LSA-R.S. 22:657 provides that claims arising under health and accident insurance contracts must be paid within thirty days of the date of receiving proof of claim unless "just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist." Failure to comply subjects the insurer to a penalty of double the benefits due under the policy plus attorney's fees "to be determined by the court."
The jurisprudential principles to be applied in cases of non-payment by the insurer is set out in Landry v. Louisiana Hosp. Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984), as follows, at 589:
"... What are `just and reasonable grounds' is a question of fact, and the district court's findings should not be disturbed unless they are clearly wrong. Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3rd Cir. 1980).
"... Where an insurer's interpretation of its policy is reasonable and not contrary to any existing jurisprudence, the denial of a claim is not arbitrary so as to require the imposition of penalties, and the insurer has a right to a judicial determination of the issues. While a court may *342 disagree with the interpretation the insurer places upon its policy, its actions in refusing to pay should not necessarily subject it to the penalty provisions of the statute...." [Citation omitted.]
The appellant in our case argues that because the medical records and discharge summary indicated the exclusionary clause was applicable, it had just and reasonable grounds on which to refuse. The appellee-cross-appellant points out that by December, 1983, the company knew from its deposition of Dr. Thornhill that the April, 1982 incident was not related to the heart problem. His position is that the insurer did not investigate the claim, which it has an affirmative duty to do.
In Guillory v. Inland Life Ins. Co., 406 So.2d 300 (La.App. 3rd Cir.1981), penalties and attorney's fees were awarded where the insurer had discontinued disability payments, relying upon a consultant's opinion that the plaintiff, though disabled, would be able to resume work in 6 to 8 weeks and had not investigated further, even though the treating physician was filing monthly reports certifying to the disability. In Lopez v. Blue Cross of Louisiana, 397 So.2d 1343 (La.1981) the court held that the insurer had no information that would indicate to a reasonable and prudent businessman that the claim was unjust. The insurer had refused payment on grounds that the hospitalization was not necessary but had failed to seek additional information from the treating physician, despite two physicians' certification that hospitalization was required.
As the record in the case before us provides no evidence that the two incidents were related and the insurer failed to have the medical evidence evaluated by a professional, we affirm the court's finding that the company arbitrarily and capriciously refused to pay.
In answering the appeal, the plaintiff seeks attorney's fees for services rendered in connection with the appeal in addition to the $2,000 awarded by the trial court. Guidelines for determining the amount of attorney's fees under LSA-R.S. 22:657 are summarized in Dowden v. Commonwealth Life Ins. Co., 407 So.2d 1355 (La.App. 3rd Cir.1981), as follows at 1358:
"The amount of attorney fees rests largely within the discretion of the trier of fact. Factors to consider include the amount involved, the skill of the attorney, and the amount of work necessarily undertaken by the attorney.... While such factors may be considered by the trial court when fixing attorney fees, nevertheless, they do not limit the exercise of the judge's discretion. When attorney fees are awarded as a result of arbitrary nonpayment of insurance benefits, such an award is deemed to be a penalty and the value of the attorney fees need not be proven...." [Citations omitted.]
In accordance with these guidelines and also the reasoning of Guillory v. Inland Life Ins. Co., supra, we award $500 in attorney's fees for preparing and arguing the appeal.
For the reasons stated above, the judgment appealed from is amended to award $500 in additional attorney's fees and is affirmed in all other respects.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] The insurer has paid $1,000 under a provision for waiving the pre-existing condition clause for initial employees up to that amount.