482 So.2d 742 (1985)
Michael J. CHERAMIE and Aline B. Cheramie
v.
BOARD OF TRUSTEES, STATE EMPLOYEES GROUP BENEFIT PROGRAM, etc.
No. CA 84 1181.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Rehearing Denied February 7, 1986.
Writ Denied April 11, 1986.
*743 Eugene G. Gouaux, Jr., Lockport, for Michael J. Cheramie and Aline B. Cheramie.
Tommy D. Teague, and Richard N. Burtt, Baton Rouge, for Bd. of Trustees, State Employees Group Benefits Program, etc.
Before CARTER, SAVOIE, and ALFORD, JJ.
SAVOIE, Judge.
Plaintiffs appeal the trial court's judgment denying payment of medical benefits under group insurance policy funded and administered by defendant, Board of Trustees, State Employees Group Benefits Program.
Appellant, Aline B. Cheramie, has been an employee of Nicholls State University since 1965. She obtained coverage under the State Employees Group Benefit Program in May of 1970, as a result of her employment. In October of 1979, Mrs. Cheramie dropped her coverage with the State Program when her husband obtained employment which provided medical insurance coverage. On June 20, 1980, while covered by her husbands medical insurance, Mrs. Cheramie underwent gall bladder surgery. Through a routine examination of her uterus, performed during the surgery, a uterine fibroid was discovered by Dr. J. Frederick Cardwell, Mrs. Cheramie's gynecologist. The existence of the fibroid was confirmed by Dr. Cardwell on September 2, 1980, when Mrs. Cheramie came in for her regular six-month checkup. According to Dr. Cardwell no action was taken or medication prescribed relating to the fibroid, since the patient was experiencing no problems. Because of problems Mrs. Cheramie was experiencing in her breast, due to previous breast surgery, she returned to Dr. Cardwell the following month for a repeat breast examination. Again no action was taken regarding the fibroid.
In November of 1980, after her husband lost his job, Mrs. Cheramie filed an application *744 to re-enroll in the State Benefit Program. Mrs. Cheramie's application was accepted and her coverage became effective on December 1, 1980. Mrs. Cheramie returned to Dr. Cardwell in March of 1981 for her regular six-month checkup. At this appointment Dr. Caldwell noted there was no change in the fibroid. Mrs. Cheramie's next checkup with Dr. Cardwell was on September 9, 1981. At this time her only complaint was the pain she was experiencing in her breast. However, a pelvic examination revealed the existence of a second uterine fibroid. This finding, along with the fact that Mrs. Cheramie was complaining about her breast, had high blood pressure, was overweight, a borderline diabetic, on birth control pills and no longer desired to have children, prompted a discussion regarding a possible hysterectomy. The hysterectomy was one of several options advised by Dr. Cardwell as alternative methods of birth control. Dr. Cardwell was of the opinion that the birth control pills were directly contributing to her condition. Dr. Cardwell informed Mrs. Cheramie that the operation was neither imperative or an emergency, and recommended waiting until the following summer when she would be less busy at her office. After discussing the alternatives with her husband, Mrs. Cheramie elected to have the hysterectomy, which was performed on October 26, 1981.
Prior to her surgery, Mrs. Cheramie contacted Martha Belteau, who handled the insurance at Nicholls State, regarding coverage. She was informed by Mrs. Belteau that she would be covered for the hysterectomy, but not for further gall bladder problems. As a result of this conversation, Mrs. Cheramie decided not to postpone the surgery until a later date.
Following the surgery Mrs. Cheramie submitted the appropriate claim forms for payment of $2,739.60 for medical expenses. Her claim was denied by defendant on the basis of a pre-existing condition limitation, contained in the policy.[1] Defendant considered Mrs. Cheramie to be an overdue applicant under the terms of the policy since she did not apply for coverage within thirty days of being eligible. As a result of this determination, any medical expenses incurred in the first twenty-four months that the policy is in force are not covered if they were in connection with an illness or injury for which the insured received treatment, services or was prescribed drugs during a twelve month period prior to the effective date of policy. Defendant reasoned that the uterine fibroid was a pre-existing condition for which Mrs. Cheramie had received treatment within the twelve month period. Mrs. Cheramie filed suit seeking payment of the claim together with statutory penalties and attorney's fees for failure to pay the claim.
The trial court found that Mrs. Cheramie was an overdue applicant under the terms of the contract and that the expenses incurred *745 were received in connection with a pre-existing illness. The court also found that she had received services from Dr. Cardwell for this illness within the twelve month period immediately prior to the effective date of her coverage. Based on these findings the court dismissed Mrs. Cheramie's suit.
From this judgment Mrs. Cheramie appeals alleging the following specifications of error:
1. The trial court erred in finding that the applicable contract to be applied in this case is the July 20, 1981 Policy instead of the May 1, 1976 Plan.
2. The trial court erred in finding Aline B. Cheramie subject to the Pre-Existing Condition Clause of the July 20, 1981 policy as it pertains to overdue application.
3. The trial court erred in finding that Dr. J. Frederick Cardwell performed "services" to Mrs. Cheramie at her office visits on September and October of 1980 and by discovering uterine fibroids and therefore, the expenses incurred by her in October of 1981 were not covered by her contract of insurance.
4. The trial court erred in not finding the defendant-appellee, State Employees Group Benefits Program, arbitrary and capricious in its refusal to pay medical benefits under its policy of insurance.

SPECIFICATION OF ERROR NO. 1
Mrs. Cheramie contends that the May 1, 1976, contract and more specifically, its definition of pre-existing condition, should control in this case.[2] She asserts that this was the contract under which her coverage became effective, and, therefore, its provisions should govern. The trial court found that the contract of July 20, 1981, had superseded the earlier contract and was therefore controling in this situation. In his reasons for judgment the trial judge stated:
The court feels that the claim that is presented for payment, you might say, in this lawsuit, materialized in October of 1981, at which time, of course, she was in contract with the Board of Trustees, State Employees Group Benefits Program, under their contract of July 20, 1981. At page 5 of that contract, its says towards the end of the page, the obligations and the rights of all persons under this contract shall be determined in accordance with the terms of this contract, without regard to the terms of any prior agreement, or of any instrument amending or supplementing or replacing any such agreement. So for better or worse, and in some situations, I am sure there are better ones to the program. In Mrs. Cheramie's case, the definition involving coverages as to pre-existing illness or injury was, you might say, broadened by the insertion of the word "services." I am sure we could go through the plan and find some aspects of it that would be beneficial to a particular employee under this medical coverage.
Be that as it may, I see no reason and, again, no authority was cited to me to prohibit this plan which went into effect as of July 20, 1981, to be applicable to the claim which arose in October of '81, after the effective date of this plan.
Under the terms of the contract of July 20, 1981, it is clear that this plan did not supplement any prior existing plans, but rather replaced them in their entirety. On the day Mrs. Cheramie's claim arose in October of 1981, the July 20, 1981, contract was in effect and applicable to her claim. Therefore, we find this assignment of error to be without merit.

SPECIFICATION OF ERRORS NO. 2 and 3
Mrs. Cheramie contends the trial court erred in finding that she was an overdue *746 applicant with a pre-existing condition. Her contention is a twofold one. First, she alleges that by dropping coverage and later resuming it she should be treated as a new employee rather than an overdue applicant. Secondly, she alleges she did not receive treatment or services in connection with an illness or injury sufficient to constitute a pre-existing condition.
Due to our disposition of the issue of whether a pre-existing condition existed any further discussion as to her being a new employee vis-a-vis an overdue applicant is hereby pretermitted.
Under the terms of the contract, a pre-existing condition is any illness or injury for which the insured received treatment or services, or was prescribed drugs during a specified period[3] prior to the effective date of coverage. All medical expenses incurred in connection with that condition are not considered as covered expenses if incurred during the initial period of coverage.[4] Therefore, in order to be excluded, the condition must be one that is present and treated prior to the effective date of coverage.
We note at the outset that the courts imposed a strict burden on the insurer to prove that an exclusionary clause is applicable and, in the case of a health policy, that the alleged pre-existing condition did in fact predate the effective date of the policy. Estate of Borer v. Louisiana Health Service, 431 So.2d 49 (La.App. 1st Cir.1983); Casey v. Proprietors Life Assurance Company, 470 So.2d 339 (La.App. 5th Cir.1985).
Brenda Kelly, a claims examiner for defendant who handled Mrs. Cheramie's claim testified that the sole basis for the denial of the claim was the fact that the fibroid was discovered prior to the effective date of coverage. This information was provided to defendant by Mrs. Cheramie in her Statement of Health at the time she reapplied for coverage. With the existence of the fibroid, defendant reasoned that the visits to Dr. Cardwell in September and October of 1980 were for treatment of the fibroid, and that the hysterectomy was the direct result of the initial fibroid.
The trial court found that the discovery of the fibroid during the gall bladder surgery did in fact constitute a pre-existing condition. The court further reasoned that the regular visits to Dr. Cardwell by Mrs. Cheramie if not constituting treatment, did constitute services for her pre-existing condition. These findings are in direct conflict with the testimony of Dr. Cardwell, plaintiff's treating physician. The deposition of Dr. Cardwell, which was submitted at trial, was the only medical evidence offered by either party. In Dr. Cardwell's opinion, there was no pre-existing condition which prompted surgery. Dr. Cardwell testified that while the existence of the fibroid was a factor considered in the decision to have the hysterectomy, it was only one of several factors. The other factors which Dr. Cardwell felt contributed to the need for the hysterectomy were Mrs. Cheramie's breast problems, blood pressure, weight, age, possible diabetes and most important, her use of birth control pills. Dr. Cardwell expressed the opinion that her use of birth control pills as a means of fertility control was the underlying cause of the majority of her problems. Because Mrs. Cheramie did not desire to have additional children, she and Dr. Cardwell discussed alternative methods of fertility control, which included the hysterectomy. Due to the existence of these other factors, of which the fibroids were one, Dr. Cardwell felt that the hysterectomy would be the best method of achieving fertility control, while at the same time alleviating some of the problems she was experiencing. In his opinion it was not until all of these factors were present and a second fibroid was discovered that the "condition" came into existence.
*747 As to the question of whether Mrs. Cheramie received treatment or services for this condition, again the totality of the circumstances must be observed. While it is true she did receive treatments for some of the symptoms which constituted factors leading to the surgery, the condition itself, being the combination of these factors, did not manifest until after the effective date of coverage. It was not until September 9, 1981 when Dr. Cardwell discovered the second fibroid did the "condition" precipitate the need for surgery. According to the testimony of Dr. Cardwell, she did not receive treatment for this condition until October 27, 1981 when he performed the hysterectomy.
The general rule for appellate review of facts is whether the trial court was manifestly erroneous or clearly wrong as espoused in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The basis for the Arceneaux rule is that the trial court had the opportunity to observe the demeanor and credibility of the witnesses as they testified. However, where a trial judge relies on the deposition of a witness, the rule of Arceneaux does not apply because the trial judge is in no better position to assess the credibility than an appellate court. When evaluating depositions rather than live testimony we must determine the sufficiency and preponderance of the evidence. Hayes v. Commercial Union Assurance Company, 459 So.2d 1245 (La. App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985); Gould v. State, Through, Department of Corrections, 435 So.2d 540 (La.App. 1st Cir.), writ denied, 438 So.2d 1107 (La.1983). Because the medical testimony in this case was presented by deposition, this court is not bound by the manifest error rule in evaluating that evidence.
Applying these rules to the facts, and terms of the contract, we find that the medical expenses incurred were not in connection with an injury or illness for which Mrs. Cheramie had received treatment or services. Rather the surgery was the result of a condition brought on by the existence of a combination of factors which evidenced themselves after the effective date of coverage. Furthermore, all treatment or services connected with this condition were also rendered after the effective date.
Therefore, we conclude that the defendant insurer failed to carry its burden of proving by the preponderance of the evidence the applicability of the policy exclusion of a pre-existing condition. Accordingly, we find the trial erred in denying coverage on the basis of the pre-existing condition limitation.

SPECIFICATION OF ERROR NO. 4
Mrs. Cheramie contends that the trial court erred in failing to find defendant, State Employees Group Benefit Program, arbitrary and capricious in its refusal to pay medical benefits under its policy of insurance. Since the trial court dismissed Mrs. Cheramie's claim it did not reach this issue. Therefore, we will address the issue of penalties and attorney's fees for the first time on appeal.
LSA-R.S. 22:657(A) provides, in pertinent part, as follows:
All claims arising under the terms of health and accident contracts issued in this state, ... shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist.... Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.
The statutory language is clear and unambiguous. Whenever a claim is properly presented under a health and accident contract, it must be paid within 30 days, unless just and reasonable grounds exist, such as *748 would put a reasonable and prudent businessman on his guard that the claim is unjust. Lopez v. Blue Cross of Louisiana, 397 So.2d 1343 (La.1981); Casey v. Proprietors Life Assurance Company, 470 So.2d 339 (La.App. 5th Cir.1985). What constitutes just and reasonable grounds for failing to pay has been held to be a question of fact to be determined from the circumstances of the case in question. Landry v. Louisiana Hospital Services, Inc., 449 So.2d 584 (La.App. 1st Cir.1984).
Applying these rules to the case sub judice, we conclude that the defendant's failure to pay was without just and reasonable grounds. The defendant did not have information which, under the language of the statute, would have placed a reasonable and prudent businessman on his guard that the claim was unjust. The defendant's claims examiner, Brenda Kelly, testified that the sole basis of the denial was the mention of the initial fibroid's existence in Mrs. Cheramie's Statement of Health form. This testimony corresponds with that of Dr. James McElveen, the executive director of the State Employees Group Benefit Program. Dr. McElveen testified that he informed Mrs. Cheramie, by letter, that the decision to deny her claim was based upon the information contained in the Statement of Health form.
The only other information available to defendant were the correspondences received from the treating physician, Dr. Cardwell. In these, Dr. Cardwell expressed his opinion that there was no pre-existing condition in this case. At no point in the correspondences did Dr. Cardwell indicate that he had prescribed drugs for or treated the fibroid prior to the hysterectomy. Further, Dr. Cardwell indicated that the hysterectomy was not the result of the fibroid and that the pathology report showed it was perfectly benign.
Without any attempt to obtain additional information through investigation, or have the available medical evidence evaluated by a professional, defendant chose to deny coverage on the basis of pre-existing condition. We do not find these facts sufficient to have reasonably put defendant on guard against an unjust claim. Under the facts presented in this record, defendant had a duty to further investigate this claim before making a decision as to its disposition. By failing to do so, we find that the defendant acted arbitrarily and capriciously in refusing to pay the claim. Casey v. Proprietors Life Assurance Company, 470 So.2d 339, 342 (La.App. 5th Cir.1985). We therefore award Mrs. Cheramie $2,739.60 under the penalty provisions of LSA-R.S. 22:657(A).
As to the award of attorney's fees, LSA-R.S. 22:657(A) states that the amount is to be determined by the court. While the amount of the attorney's fees is within the discretion of the court, factors to consider include the amount involved, the skill of the attorney and the amount of work necessarily undertaken by the attorney. Naquin v. Air Engineered Systems & Services, 463 So.2d 992 (La.App. 3rd Cir.), writ denied, 465 So.2d 735 (La.1985); Dowden v. Commonwealth Life Insurance Company, 407 So.2d 1355 (La.App. 3rd Cir.1981).
After reviewing the record, and in accordance with the foregoing factors, we conclude that an award of $1,000.00 for attorney's fees is appropriate.
Accordingly, we hold that the decision of the trial court is reversed and judgment is rendered in favor of plaintiff-appellant and against defendant in the amount of $2,739.60 with the legal interest from date of judicial demand until paid together with statutory penalties in the amount of $2,739.60 and attorney's fees in the amount of $1,000.00. Costs, amounting to $687.97 are taxed to defendant.
REVERSED AND RENDERED.
NOTES
[1] The applicable provisions of the policy are as follows:

D. Pre-Existing Condition
1. Overdue application
The terms of the following paragraphs shall apply to all employees who apply for coverage after thirty (30) days from the date the employee became eligible for coverage and to all eligible dependents for whom the application for coverage was not completed within thirty (30) days from the acquired:
a. The effective date of coverage shall be:
(1) The first of the month following the date of the receipt by the State Employees Group Benefits Program of all required forms, if such forms are received by the State Employees Group Benefits Program prior to the fifteenth (15) of the month.
(2) The first of the second month following the date of the receipt by the State Employees Group Benefits Program of all required forms, if such forms are received by the State Employees Group Benefits Program after the fifteenth (15) of the month.
b. The Program will require that all overdue applicants complete a Statement of Health form and sign an Acknowledgement of Pre-existing Condition form.
C. Hospital expenses and other medical expenses incurred during the first twenty-four (24) months that coverage for the employee and/or dependent is in force under this contract will not be considered as covered medical expenses if they are in connection with an illness or injury for which the Covered Person received treatment, services, or was prescribed drugs, during the twelve (12) month period immediately prior to the effective date of such coverage.
[2] At the time Mrs. Cheramie became eligible for coverage in December 1980, insurance was being governed by the May 1, 1976 contract. Under this plan pre-existing conditions were excluded from coverage if the insured received treatment or was prescribed drugs during the specified period immediately preceding the effective date of coverage. On July 20, 1981, a new contract went into effect which broadened the definition of pre-existing condition to include receiving "services" within the specified period.
[3] The period is three months for applicants who timely file, twelve months for overdue applicants.
[4] The primary period is twelve months for applicants who timely file, twenty-four months for overdue applicants.