536 So.2d 699 (1988)
Joseph D. HOFFPAUIR & Mary Hoffpauir, Plaintiffs-Appellees,
v.
TIME INSURANCE COMPANY, Defendant-Appellant.
No. 87-1024.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1988.
Millican, Miller & Buisson, Jacquelyne Heinen, Jennings, for plaintiffs-appellees.
Barnett, Pitre, Davis & Yoes, Henry E. Yoes, III, Lake Charles, for defendant-appellant.
Before GUIDRY, FORET and KNOLL, JJ.
FORET, Judge.
Plaintiffs, Joseph D. Hoffpauir and Mary *700 Hoffpauir[1], filed suit against Time Insurance Company to recover insurance benefits allegedly owed in connection with a major medical hospitalization insurance policy issued by defendant. The trial court rendered judgment in favor of plaintiffs in the sum of $6,793.36, and rejected plaintiffs' claim for penalties and attorney's fees provided for by R.S. 22:657. Defendant has appealed, and plaintiffs have answered the appeal, contending that they are entitled to penalties and attorney's fees.
Two issues raised on appeal which were not considered by the trial court are as follows:
1. Have appellees preserved their right to ask for penalties and attorney's fees on appeal?
2. Did the trial court err in considering its personal knowledge of the plaintiffs' reputation in the community?

ASSIGNMENT OF ERROR NO. 1
Defendant maintains that plaintiffs cannot raise the issue of penalties and attorney's fees on appeal in view of the fact that plaintiffs have not timely filed an answer to the defendant's appeal in compliance with Art. 2133 of the Code of Civil Procedure. Specifically, defendant contends that plaintiffs improperly filed their motion for appeal and/or answer to appeal in the trial court after this case had been removed to the appellate court pursuant to defendant's suspensive appeal. While we see no record of any motion for appeal filed by plaintiffs in the trial court, we note that plaintiffs timely filed an answer to appeal in the appellate court, alleging that the trial court erred in failing to award penalties and attorney's fees. Accordingly, we find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial court erred in considering its personal knowledge of plaintiffs' reputation in the community. We agree. Such evidence is often inaccurate and is not subject to cross-examination by opposing litigants. In reaching its decision, the trial court must confine itself to the evidence adduced at trial. In the instant case, we find that the evidence of record amply supports the trial court's decision and, accordingly, we find this to be harmless error.
As to the remaining issues presented for our consideration on appeal, we affirm the decision of the trial court, as we find no error in law or manifest error in fact. The trial court wrote excellent reasons for judgment, and we adopt same as our own, a copy being attached hereto and made a part hereof.
Costs of this appeal are assessed to appellant, Time Insurance Company.
AFFIRMED.

31st Judicial District Court

Parish of Jefferson Davis

State of Louisiana

No. C-68-86

REASONS FOR JUDGMENT
In this suit the plaintiffs, JOSEPH D. HOFFPAUIR and his wife, MARY L. HOFFPAUIR, seek to recover benefits under a major medical policy of insurance issued to them by the defendant, TIME INSURANCE COMPANY (TIME), together with penalties and attorney's fees under provisions of LSA R.S. 22:657. TIME resists payment on 2 different bases. Initially, TIME INSURANCE COMPANY declined the claim because it contends that it reasonably believed that the treatment obtained within 6 days of the application was the continuation of treatment of a pre-existing condition which pre-dated the policy since there was no accident. Therefore, it was a "sickness" for which the policy provided no coverage if it manifested itself within 15 days of the policy issue. Secondly, there was a material misrepresentation in the application for the policy *701 thus voiding the policy. TIME bears the burden of proof on both of these defenses.
The issues before the court are:
(1) Whether TIME has born its burden of proving a pre-existing condition/sickness thus excluding coverage.
(2) Whether TIME has born its burden of proving a material misrepresentation in the application thus voiding the policy.
(3) Whether plaintiffs have proven that they are entitled to penalties and attorney's fees under LSA R.S. 22:657 if issues 1 and 2 are resolved in their favor.
Certain material facts are undisputed. On May 6, 1985 the HOFFPAUIRS applied for insurance with TIME through their local agent, Claude Leger. The application asked "To the best of your knowledge and belief has any person to be insured within the last 10 years: 15. Had any indication, diagnosis, or treatment of: ... g) The muscular or skeletal system including arthritis, gout, rheumatism, and back or spine disorders or treatment or muscular disorder?..." The HOFFPAUIRS answered no to this question.
The policy was issued effective May 7, 1985. On May 13, 1985, Dr. Bruce A. Grovenberg visited Mrs. Hoffpauir at her home for an injury to her back which she stated she sustained during a week-end of gardening. After approximately 2 weeks of conservative treatment Dr. Grovenberg referred her to Dr. John Raggio, a neurosurgeon in Lake Charles, Louisiana, who saw her on June 3, 1985. Following further conservative treatment and diagnostic tests which indicated to him that she had a ruptured disc at the L5-S1 level, she was admitted to St. Patrick's Hospital in Lake Charles, Louisiana and surgery was performed on June 20, 1985. The surgery confirmed the ruptured disc at the L5-S1 level which was successfully repaired.
In September of 1984, some 8 months prior to the issuance of the policy by TIME, Mrs. Hoffpauir sought and obtained chiropractic treatment from Dr. John E. Flynn in Houma, Louisiana, for a back problem. Dr. Flynn saw and treated her 24 times from September 9, 1984, through November 26, 1984, which was the last visit. Dr. Flynn made a diagnosis of acute lumbosacral strain with associated vertebral dysfunction resulting in neuralgia.

PRE-EXISTING CONDITION/SICKNESS
TIME contends that under the terms of its policy there was no coverage for Mrs. Hoffpauir's back condition since the treatment which she obtained within 6 days of the issuance of the policy was the continuation of treatment of a pre-existing condition which pre-dated the policy since there was no accident. Therefore, it was a "sickness" for which the policy provided no coverage if it manifested itself within 15 days of the issuance of the policy.
The policy contains very few definitions and it is interesting to note that a pre-existing condition is not specifically defined.
The following definitions are pertinent:
"INJURY: Injury as used in this policy means accidental bodily injury sustained while this policy is in force."
"SICKNESS: Sickness as used in this policy means sickness which first manifests itself more than 15 days after the policy is in force. A sickness manifests itself if you receive medical treatment or consultation for it or have symptoms of it."
The following provision may also be pertinent concerning a pre-existing condition which provision was referred to in the deposition testimony of Ms. Holly Russell, a senior medical examiner for TIME:
"TIME LIMIT ON CERTAIN DEFENSES: After two years from the Policy Date, no misstatement made by you in the application will be used to void the policy or deny a claim for loss incurred commencing after the end of the two year period.
No claim for loss incurred after two years from the Policy Date will be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss *702 had existed prior to the effective date of this policy."
Words used in an insurance contract are to be understood in the usual and common signification. Former Civil Code Article 1946 (now Article 2047); Harmon v. Lumbermens Mutual Casualty Co., 247 La. 263, 170 So.2d 646 (1965); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939). Ambiguous coverage provisions in a policy are construed most favorably to the insured and against the insurer. Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d 171 (1958); Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1954); Mutual Life Ins. Co. of New York v. New, 125 La. 41, 51 So. 61 (1910). In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. Civil Code Art. 2056.
Any exclusion from coverage in an insurance policy must be clear and unmistakable. If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted. The burden is on the insurer to prove the applicability of an exclusionary clause in a policy of insurance. Landry v. Louisiana Hosp. Service, Inc., 449 So.2d 584 (La.App. 1 Cir.1984) and authorities therein cited. The evidence required to meet this burden of proof must be certain and decisive, leaving no room for speculation or assumption. Ferro v. Gebbia, 252 So.2d 545 (La.App. 4 Cir.1971), writ denied, 260 La. 16, 254 So.2d 618 (1971).
Our courts impose a strict burden on the insurer to prove that an exclusionary clause is applicable and, in case of a health policy, that the alleged pre-existing condition did in fact pre-date the effective date of the policy. Phelps v. Southern National Insurance Company, 83 So.2d 463 (La. App. 2 Cir.1955); Estate of Borer v. Louisiana Health Service, 431 So.2d 49 (La. App. 1 Cir.1983); Casey v. Proprietors Life Assur. Co., 470 So.2d 339 (La.App. 5 Cir. 1985); Cheramie v. Bd. of Trustees, 482 So.2d 742 (La.App. 1 Cir.1985); and Powell v. Old Southern Life Ins. Co., 780 F.2d 1265 (5 Cir.1986).
The only medical evidence introduced at trial was the deposition testimony of Drs. Flynn and Raggio.
The court has carefully reviewed both depositions. Dr. Raggio was clearly of the opinion that the disc-herniation which he saw at the time of surgery occurred at the time of the gardening episode and was not a pre-existing condition. Dr. Flynn treated Mrs. Hoffpauir for a lumbosacral strain. He testified that it was never his opinion that she had a problem disc or some kind of problem with her disc to the extent of it being herniated or slipped. If he had suspected a ruptured disc he would have referred her to a specialist.
The weight and preponderance of the medical evidence is that the herniated disc did not pre-date the effective date of the policy and was not a pre-existing condition. Therefore, the treatment within the first fifteen (15) days of the policy may not be termed a sickness because it was not the continuation of treatment of a pre-existing condition as argued by TIME.
The Supreme Court in Jennings v. Louisiana and Southern Life Ins. Co., 290 So.2d 811 (La.1974) cited with approval the following definition of "sickness" from Webster's Third New International Dictionary (unabridged): "SICKNESS: ... the condition of being ill: ill health: ILLNESS... a disordered, weakened, or unsound condition ... a form of disease ...". Since words used in an insurance policy must be understood in the usual and common signification the court cannot classify a herniated disc as a sickness.
The court concludes that TIME has failed to carry its strict burden of proof with respect to its coverage defense.

MATERIAL MISREPRESENTATION
TIME next contends that the policy was void since there was a material misrepresentation in the application for the policy since the HOFFPAUIRS answered "no" to the question on the application concerning *703 the disclosure of any prior treatment or diagnosis of muscular and back problems.
The statutory law governing the misrepresentation defense is found in LSA R.S. 22:619 which provides:
"§ 619. Warranties and misrepresentations in negotiation; applications
A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation, of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."
The jurisprudence interpreting this statute places the burden of proof upon the insurer. Although the statute provides that a false statement bars recovery only if the insurer proves it is made with the intent to deceive or if it materially affects the risk, Louisiana jurisprudence requires proof of both factors. See Jamshidi v. Shelter Mutual Insurance Company, 471 So.2d 1141 (La.App. 3 Cir.1985) and authorities therein cited. The insurer must meet a three-tiered burden to avoid liability based on a statement in the application for insurance. First, it must show that the statements were false. Second, it must establish that the representations were made with an actual intent to deceive. Third, the insurance company must establish that these mis-statements materially affected the risk assumed by the insurer. "Material" means that the statements must have been of the nature that, had it been true, the insurer either would not have contracted or would have contracted only at a higher premium rate. Martin v. Security Industrial Insurance Co., 367 So. 2d 420 (La.App. 2 Cir.1979).
After a review of the testimony introduced at trial the court concludes that TIME met its burden of proving the falsity of the statement concerning prior treatment of the back and that this statement materially affected the risk which it assumed.
This leaves for resolution the question whether TIME has met its burden that the statement was made with the intent to deceive.
Our courts have recognized the difficulty of proving intent to deceive and have held that the court must look to the surrounding circumstances indicating the insured's knowledge of the falsity of the representation and the recognition of the materiality of the representation or from circumstances which create a reasonable assumption that the insured recognized the materiality. Henry v. State Farm Mut. Auto. Ins. Co., 465 So.2d 276 (La.App. 3 Cir.1985). Jamshidi v. Shelter Mutual Insurance Company, supra.
The evidence shows that this was the first time the HOFFPAUIRS had to obtain their own insurance. During their married life they were insured through Mr. Hoffpauir's employer in the oilfield. Mr. Hoffpauir left his prior employment to begin his own consulting business, thus necessitating the obtaining of their own insurance.
The application was filled out at their home by Claude Leger, TIME's local agent, who asked the questions set forth in the application. Various prior medical problems concerning both Mr. and Mrs. Hoffpauir were disclosed in the application, however, the fact that Mrs. Hoffpauir had seen the chiropractor for a back problem some eight (8) months previous was not disclosed. Mr. Hoffpauir testified that he knew his wife had seen Dr. Flynn, but was suprised to learn that she had seen him 24 times. She was not a complainer. He didn't even file a claim with his own insurance company at the time. Since she recovered *704 and was having no further problems he really didn't think it was too historical. He stated that his wife contributed some of the information and he left to attend to some business before the application was completed.
Mrs. Hoffpauir's explanation for the omission was that the prior treatment by Dr. Flynn did not come to her mind. It might have been the way the question was asked. She stated that she figured the back problem was over with. She was not having any problems at the time of the application. The prior treatment did not come to mind until she was questioned more thoroughly by Dr. Raggio who was a specialist.
This court accepts the testimony of Mrs. Hoffpauir as being credible. Although the circumstances from the insurance company's point of view certainly looks suspicious, this court cannot conclude that the HOFFPAUIRS had the intent to deceive TIME at the time the application was made. This court has known of the HOFFPAUIR family for many years and knows that they are good, decent, honest and hard-working individuals. To ascribe an intent to deceive the court would have to accept as a fact that Mrs. Hoffpauir was having trouble with her back and wanted to have insurance to cover any future problems. That after the policy was in effect she engaged in gardening operations which happened to cause the herniated disc knowing that this would be covered. If this was the case why did she disclose to Dr. Raggio her prior treatment if she knew all of the above and had the intent to deceive. As stated above the court just cannot ascribe an intent to deceive on the part of the HOFFPAUIRS even though the circumstances do look suspicious.
Therefore, the court finds that TIME has failed in its burden of proving that the statement concerning prior back problems was made with the intent to deceive.

PENALTIES AND ATTORNEY'S FEES
Plaintiffs claim that they are entitled to penalties and attorney's fees under LSA R.S. 22:657 which provides in pertinent part the following:
"A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases."
Thus, failure to make payment within thirty (30) days of written notice and proof of claim subjects the insurer to penalties and attorney's fees, unless just and reasonable grounds exist to find no coverage, such as would put a reasonable and prudent business man on guard.
Whether the insurer denied plaintiff's claims on just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, is a question of fact. Benintende v. First Protection Life Insurance Company, 452 So.2d 258 (La.App. 5 Cir.1984).
Under the circumstances of this case the court concludes that TIME had just and reasonable grounds such as would put a reasonable and prudent business man on guard to deny the claim. Therefore, the claim for penalties and attorney's fees asserted by plaintiffs is denied.

*705 CONCLUSION
For the above reasons plaintiffs are entitled to judgment in their favor and against defendant under the provisions of the policy for 80% of the amount of the medical bills introduced at trial by stipulation less the $500 deductible provision. In addition, plaintiffs are entitled to judgment for legal interest and all costs of the proceedings. The fees of the expert witnesses testifying by way of deposition are hereby fixed as follows and taxed as costs: Dr. John E. Flynn, $125.00 and Dr. John Raggio, $200.00.
Counsel for plaintiff should prepare an appropriate judgment, submit it to counsel for defendant for his approval as to form and then to court for signature.
Jennings, Louisiana, this 4th day of June, 1987.
 /s/ William N. Knight
 WILLIAM N. KNIGHT,
 DISTRICT JUDGE
NOTES
[1] During the pendency of this appeal, plaintiff, Mary Hoffpauir, died, and her four children, Bridget Hoffpauir Thomas, Cynthia Hoffpauir Cooper, Aaron Douglas Hoffpauir, and John Darin Hoffpauir, have been substituted as plaintiffs herein.