568 So.2d 184 (1990)
Joseph D. MORGAN, Plaintiff/Appellee,
v.
GOLDEN RULE INSURANCE COMPANY, Defendant/Appellant.
No. 21751-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*185 Lundy & Dwight by Clayton Davis, Lake Charles, for Joseph D. Morgan.
Hudson, Potts & Bernstein by Gordon L. James, Monroe, for Golden Rule Ins. Co.
Davenport, Files & Kelly by William G. Kelly, Jr., Monroe, for Steve Best & Steve Best Ins., Inc.
Before LINDSAY, HIGHTOWER, JJ., and JASPER E. JONES, Judge Ad Hoc.
LINDSAY, Judge.
The defendant, Golden Rule Insurance Company (GR), appeals a judgment in favor of the plaintiff, Joseph D. Morgan, finding that Morgan did not intentionally make material misrepresentations on his application for health insurance and therefore GR did not have just and reasonable grounds upon which to rescind the policy. Morgan was awarded the policy benefit of $15,000, plus $15,000 in penalties and $15,000 in attorney fees. GR does not contest that part of the judgment ordering it to pay $15,000 on the insurance policy. GR does appeal from that portion of the judgment ordering it to pay penalties and attorney fees.
The plaintiff, Joseph Morgan, has answered the appeal, claiming the trial court award for attorney fees was excessively low. The plaintiff also seeks attorney fees and costs incurred in connection with this appeal.
We amend and as amended, affirm the trial court judgment.

FACTS
On August 26, 1986, Joseph Morgan and his wife, Angela, completed an application for health insurance with GR. This application was completed with the aid of Steve Best of Steve Best Insurance Inc., a broker for GR. Best was personally acquainted with the plaintiff and approached him about securing health insurance with GR.
On the application, Joseph Morgan, then twenty-five years old, disclosed that he had suffered grand mal seizures in 1980 and in 1982. He indicated that he was hospitalized for this condition in 1980. Since that time, he has been taking phenobarbital and Dilantin. The application states, apparently in the context of the grand mal seizures, that Morgan had no problems with seizures since 1982. The application further noted that Mr. Morgan's previous health insurer, State Farm, had excluded the grand mal seizures from coverage on its policy. On the application, Mr. Morgan furnished the name, address and phone number for his treating physician, Dr. Michael Boykin. He also disclosed that he had last seen Dr. Boykin on August 19, 1986, just a few days prior to the date the insurance application was completed.
In August, 1986, the plaintiff was experiencing dizziness, slurred speech and numbness. His doctor ordered an EEG and EKG test in which the plaintiff wore a monitor for 24 hours. This test failed to reveal any medical problem. Steve Best, the insurance agent, saw the plaintiff wearing the monitor during this time. However, the fact that this test was conducted was not mentioned in the insurance application.
After the application was completed, it was forwarded to GR for approval, and the issuance of a health insurance policy. On September 12, 1986, Teresa Wall, an "underwriting communicator", telephoned the Morgan residence and talked with Angela *186 Morgan concerning the insurance application. Mrs. Morgan confirmed that her husband suffered from grand mal seizures and was taking medication. Mrs. Morgan also stated that her husband regularly consulted his physician to keep this condition under control. Mrs. Morgan confirmed that Mr. Morgan had undergone extensive testing in 1980 but that the test results were not conclusive and that Mr. Morgan did not have epilepsy. Mrs. Morgan testified that she informed Ms. Wall about the 24 hour EEG & EKG test undertaken in August, 1986. Mrs. Morgan testified that she informed GR that her husband had been having dizzy spells and was under the care of Dr. Boykin. These facts were disputed by GR. The record of information gathered in the telephone conversation is very brief and contains no reference to the plaintiff's dizzy spells or to the 24-hour EEG & EKG test. Nevertheless, Mrs. Morgan was quite positive that these facts were discussed with Ms. Wall during their conversation.
GR did not contact Dr. Boykin or request the plaintiff's medical records before issuing the health insurance policy which is the subject of this litigation. On October 3, 1986, GR issued the policy to Joseph and Angela Morgan with an epilepsy rider. The effective date of the policy was September 15, 1986.
In October, 1986, Joseph Morgan was diagnosed as having a brain tumor. He underwent surgery on October 30, 1986. On November 11, 1986, plaintiff filed a claim with GR to recover on his health insurance policy for the medical bills incurred in connection with his recent surgery and treatment.
Following receipt of Mr. Morgan's claim, GR then obtained his medical records. GR found that since his last seizure in 1982, the plaintiff had sought medical treatment numerous times in connection with dizziness, numbness and slurred speech. GR also learned about Mr. Morgan's 24-hour EEG and EKG tests which were undertaken in August, 1986 in an attempt to determine the cause of his worsening neurological symptoms. GR did not contact its agent, Steve Best, until several months after the claim was filed by the plaintiff. Prior to the decision to void the policy, GR never attempted to contact the plaintiff in order to determine if there was a reason for the possible inconsistencies.
Based upon its review of the application, GR determined that the plaintiff had obtained the policy based upon material misrepresentations and misstatements. GR contended that these misrepresentations were made intentionally, thus giving it the right to rescind the plaintiff's policy and deny plaintiff's claim. Further, on March 11, 1987, four months after his claim was submitted, Joseph Morgan was informed by GR that his health insurance policy had been voided.
Joseph Morgan then filed suit against GR to collect on the policy.[1] He also sought penalties, attorney fees and costs, arguing that there was no intent to deceive GR and that the insurance company had a duty to investigate prior to issuing the policy.
The case was tried before a jury. In response to interrogatories propounded to the jury, the jury made these findings:
1. Joseph and Angela Morgan did not make false statements to the insurer with the intent to deceive nor did those statements affect the risk assumed by the insurer;
2. Information received by GR was sufficient to put it on notice to make further inquiry before it issued the policy;

*187 3. The brain tumor was not a pre-existing condition as defined by the policy;
4. GR did not have just and reasonable grounds to refuse to pay the claim within 30 days;
5. Steve Best was not negligent in completion of the insurance application;
6. Steve Best did act beyond his authority and contrary to instructions by GR;
7. The unauthorized action by Steve Best was not the cause of the loss in question to GR.
Judgment was granted in favor of the plaintiff, awarding recovery on the policy, plus penalties, attorney fees, legal interest from the date of judicial demand and all costs of the proceedings.
GR appealed the judgment. On appeal, GR does not dispute that part of the judgment ordering payment to the plaintiff of $15,000, the limit on the health insurance policy. However, GR does object to that portion of the judgment ordering the payment of $15,000 in penalties and $15,000 in attorney fees.
GR contends that, based upon the facts concerning Mr. Morgan's health which were revealed after he filed his claim, the company acted reasonably in concluding that he made material misrepresentations with the intent to deceive. Therefore, GR argues that the company, in deciding to rescind the policy, had just and reasonable grounds to do so, such as would put a reasonable and prudent business man on his guard. GR argues that, because such just and reasonable grounds existed, even though they must now pay the claim, the jury erred in assessing penalties and attorney fees.
The plaintiff answered the appeal, claiming the attorney fee award of $15,000 was excessively low. The plaintiff argues that the record shows that his attorney fees in this case total $35,388 and that this is the amount that should be awarded. The plaintiff also seeks additional attorney fees and costs incurred in connection with this appeal.

PENALTIES AND ATTORNEY FEES
GR argues that the trial court erred in assessing penalties and attorney fees against it as a result of its decision to void plaintiff's policy. GR contends that it had just and reasonable grounds to believe that the plaintiff made material misrepresentations on the insurance application with the intent to deceive. Therefore, the company asserts that it was justified in its decision to void the policy and deny the claim. This argument is meritless.
Penalties and attorney fees may be assessed against an insurer for failure to timely pay a health insurance claim under the authority of LSA-R.S. 22:657, which provides in pertinent part:
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court....
The provisions of LSA-R.S. 22:657 are penal in nature and are to be strictly construed. Colville v. Equitable Life Assurance Society, 514 So.2d 678 (La.App.2d Cir.1987). Such penalties should not be assessed unless the refusal to pay is clearly arbitrary and capricious. Soniat v. Travelers Insurance Company, 538 So.2d 210 (La.1989).
Whether the insurer has denied the insured's claim on just and reasonable *188 grounds such as would put a reasonable and prudent business man on guard is a question of fact to be determined from the facts and circumstances of each case and the trial court's findings in this regard should not be disturbed unless shown to be clearly wrong. Hoffpauir v. Time Insurance Company, 536 So.2d 699 (La.App.3rd Cir.1988); Colville v. Equitable Life Assurance Society, supra; Tingle v. Reserve Life Insurance Company, 260 So.2d 333 (La.App.2d Cir.1972); McCord v. Time Insurance Company, 521 So.2d 558 (La. App. 1st Cir. 1988); Cheramie v. Board of Trustees, 482 So.2d 742 (La.App.lst Cir. 1985), writ denied 486 So.2d 734 (La.1986).
The crux of GR's argument is that even though the jury determined that the company was required to pay the claim, the company acted reasonably in its decision to void the policy and deny the claim. GR argues that the information the company originally possessed when the policy was issued was widely disparate from that contained in the plaintiff's medical records, obtained pursuant to an investigation of the plaintiff's claim.
GR contends that when the information contained in the plaintiff's application, plus the information obtained from Mrs. Morgan, was compared with the plaintiff's actual medical records, it was reasonable to conclude that the Morgans had intentionally omitted information concerning Mr. Morgan's continuing neurological problems. GR also argues that this conclusion was further reinforced by Steve Best, who had knowledge of the applicant's medical condition but failed to disclose this knowledge on the application or in subsequent conversations with company employees investigating the claim.
GR contends that it acted reasonably in its decision, pursuant to LSA-R.S. 22:619(B)[2], to void the plaintiff's insurance policy on the grounds that the Morgans intentionally made material misrepresentation Under this statute, an insurer can rescind a contract of health insurance if the policy holder, either fraudulently or with the intent to deceive the insurer, makes misrepresentations in his application that materially affect the insurer's risk. Viada v. Blue Cross of Louisiana, 524 So.2d 101 (La.App.4th Cir.1988).
The insurer has the burden of proving both misrepresentation and an intent to deceive. Benton v. Shelter Mutual Insurance Company, 550 So.2d 832 (La.App.2d Cir.1989); Jones v. United Savings Life Insurance Company, 486 So.2d 1110 (La. App.2d Cir.1986); Fagen v. National Home Life Assurance Company, 473 So.2d 918 (La.App.4th Cir.1985).
The plaintiff contends that GR had sufficient information to put it on notice to investigate Mr. Morgan's medical records before the policy was issued. The plaintiff showed that on the application, GR was informed that Mr. Morgan had previously experienced grand mal seizures. Mr. Morgan was currently taking medication, phenobarbital and Dilantin. The name, address and phone number of the plaintiff's treating physician was included, thus furnishing GR with the information necessary to fully investigate plaintiff's medical condition prior to issuing the insurance policy.
In addition, Mrs. Morgan testified that, prior to the issuance of the policy, she informed Teresa Wall, a GR employee, that the plaintiff was having dizzy spells and had undergone a 24-hour EEG and EKG test within the last several days. The evidence further reveals that GR did not contact Steve Best until several months after the plaintiff's claim was filed. At that time, when Best was questioned regarding the application, he informed GR that the plaintiff was truthful when he completed the application.
*189 GR had before it information regarding the plaintiff's serious neurological history before the policy was issued. After the claim was filed, and GR investigated the claim, GR refused to accept the facts it found, such as Steve Best's statement regarding the plaintiff's truthfulness and negating the contention that the plaintiff was intentionally misrepresenting the facts. Therefore, the trier of fact, in this case the jury, found that GR did not act reasonably in its decision to void the plaintiff's policy and thus deny his claim. The jury found that GR had sufficient information to put it on notice to make further inquiry into the plaintiffs condition prior to issuing an insurance policy, and its subsequent action in denying the claim was arbitrary and capricious.
These findings are supported by the evidence. The insurance application, standing alone, provided GR with enough information to put it on notice that the plaintiff had a continuing neurological problem which required medication and medical supervision. The disclosure of these facts in the application is sufficient to negate the inference that the plaintiff intended to deceive GR when he made the application.
The jurisprudence holds that insurers have a duty to investigate claims before reaching a decision not to pay, and failure to investigate makes nonpayment arbitrary and capricious. Lapeyrouse v. Pilot Life Insurance Company, 369 So.2d 1128 (La. App.1st Cir.1979); Barrilleaux v. Lalonole, 471 So.2d 984 (La.App.1st Cir.1985); Cheramie v. Board of Trustees, supra.
Likewise, in the present case, failure to investigate prior to issuing the insurance policy, as well as GR's actions after the claim was made, resulted in the jury finding that there was no reasonable ground for GR to refuse to pay this claim within thirty days of its filing.
Based upon the record before us, the jury was not clearly wrong in finding that GR acted without reasonable grounds in rescinding the plaintiff's health insurance policy. Accordingly, we affirm that finding and affirm the assessment of penalties and attorney fees against GR.

AMOUNT OF ATTORNEY FEES
The plaintiff answered the appeal, arguing that $15,000, the amount awarded by the trial court for attorney fees in this case, was too low. The plaintiff claims that the actual attorney fee incurred in this case was $35,388. The plaintiff contends that this was documented in the trial court and therefore, this is the amount that should properly have been awarded. The plaintiff also seeks an additional award of $5,285 for attorney fees incurred in connection with the present appeal.
LSA-R.S. 22:657 specifies that where penalties and attorney fees are awarded, the amount of attorney fees is to be determined by the court. Factors to be considered in awarding attorney fees include the knowledge and skill of the attorneys involved, the complexity of the issues inherent in the case, the amount of the controversy and the success of the party seeking the attorney fee. Goff v. John Hancock Mutual Life Insurance Company, 497 So.2d 747 (La.App.3rd Cir.1986). The assessment of attorney fees is a factual determination to be made by the trial court and will not be disturbed on review unless shown to be clearly wrong. Lucito v. Louisiana Hospital Service Inc., 392 So.2d 700 (La.App.3rd Cir.1980); Slay v. Old Southern Life Insurance Company, 498 So.2d 1129 (La.App.3rd Cir.1986), writ denied 501 So.2d 235 (La.1987).
In the present case, the plaintiff argues that the issues involved in this case were complex, that numerous depositions were taken and that GR complicated the proceedings by attempting to remove the case to federal court. Therefore, the plaintiff argues that the attorney fee award made by the trial court is excessively low. This argument is meritless.
The issues in the present case were not novel or complex but rather involved the establishment of factual matters, such as whether reasonable grounds existed for GR to rescind the plaintiff's insurance contract. The record shows that eight depositions were taken and that after the filing of *190 several pleadings, the case was returned from federal court, to be tried in the state court. These facts do not warrant an increase in the attorney fee award. Based upon the record before us, the trial court award of $15,000 for attorney fees did not constitute an abuse of discretion and we therefore decline to grant an increase.
The plaintiff also seeks an additional award of $5,825 for work performed in connection with the appeal of this case. We agree that the plaintiff is entitled to an additional award for the appellate work of his attorney. We find that $1,000 is an appropriate award in this case. Accordingly, we amend the judgment awarding attorney fees and increase that award from $15,000 to $16,000. Cf. Slay v. Old Southern Life Insurance Company, 498 So.2d 1129 (La.App.3rd Cir.1986), writ denied 501 So.2d 235 (La.1987); Carlson v. Safeco Insurance Company, 499 So.2d 664 (La. App.3rd Cir.1986), writ denied 503 So.2d 477 (La.1987); Bellard v. Safeway Insurance Company, 442 So.2d 1314 (La. App.3rd Cir.1983); Guillory v. Inland Life Insurance Company, 406 So.2d 300 (La. App.3rd Cir.1981); Cameron State Bank v. American Employers' Insurance Company, 401 So.2d 1090 (La.App.3rd Cir.1981), writ denied 409 So.2d 674 (La.1981).

CONCLUSION
For the reasons stated above, we affirm the trial court judgment awarding the plaintiff $15,000 in penalties. That portion of the judgment awarding the plaintiff attorney fees in the amount of $15,000 is amended to increase the award to $16,000. Costs are assessed to the defendant.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Joseph Morgan originally filed suit against GR and later amended his petition to add Steve Best as a defendant. In its answer, GR reconvened against Mr. and Mrs. Morgan. GR also third-partied Steve Best and his errors and omissions insurer. GR claimed that Steve Best was a broker and not an agent of the company and that he failed to have the applicants complete the application in their own handwriting, as required by the company. GR also alleged that Best failed to disclose information about Joseph Morgan's medical condition. Ultimately, these incidental actions were rejected. None of these actions have been presented to this court for review.
[2] LSA-R.S. 22:619(B) provides:

B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.