431 So.2d 49 (1983)
ESTATE OF Hollis G. BORER, et al.
v.
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY.
No. 82 CA 0561.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Thomas B. Waterman, Ponchatoula, for plaintiffs-appellants.
Alton B. Lewis, Jr., Hammond, for defendant-appellee.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
This matter is before us on appeal after remand by the Supreme Court to the trial court, as per Estate of Borer v. Louisiana Health Service, 398 So.2d 1124 (La.1981), where the court said:
"We hold that failure to attach the application to the policy when issued and delivered does not affect the insurer's right to defend on the basis that, by the terms of the policy, coverage is excluded. To the extent that Smith v. North American Company for Life, Accident and Health *50 Insurance, 306 So.2d 751 (La.1975), is contrary, that case is overruled....
For the foregoing reasons, the judgments of the lower courts are reversed, and the cause (sic) remanded to the trial court for a trial on the issue of whether the policies excluded coverage in the instant case." 398 So.2d at 1127.
On remand, Louisiana Health Service & Indemnity Company (defendant) sought to prove that the claim presented by the Heirs of Hollis G. Borer (plaintiffs) was not covered by its insurance contracts because of the pre-existing conditions exclusion clauses in those contracts. The trial court ruled in defendant's favor, and plaintiffs have perfected this devolutive appeal, asserting three assignments of error: (1) the trial court erred in finding that Hollis G. Borer (decedent) was hospitalized for a pre-existing condition which had manifested itself prior to the effective date of the insurance policies; (2) the trial court erred in finding that defendant could effectively deny coverage under the group policy; and (3) the trial court erred in failing to find defendant arbitrary and capricious and thus liable to plaintiffs for penalties, attorney fees and court costs.
Decedent was admitted into Baton Rouge General Hospital on May 3, 1978. His admitting physician was Dr. Charles S. Prosser, who had treated him since 1968 for recurring abdominal complaints. He hospitalized decedent in 1977 for cholecystitis (gallbladder disease). On this occasion, decedent again had complaints of upper abdominal pain which was consistent with cholecystitis. After his admittance to the hospital, tests revealed marked anemia which Prosser could not explain but thought might be caused by a malignant disorder. He felt surgery would be advisable to excise the diseased gallbladder and to explore the abdomen to search for the cause of decedent's anemia. The surgery was performed by Dr. Samuel Field, Prosser's partner, who removed the diseased gallbladder and found no malignancy, but noted a discoloration or pallor in the transverse colon, the walls of which appeared thicker than normal. Dr. Bruce Baer, a gastroenterologist, was then consulted. He performed a proctoscopic examination which showed severe chronic ulcerative colitis.[1] Notwithstanding medication and treatment, decedent developed a toxic megacolon,[2] so additional surgery was performed to excise the colon. Decedent's condition declined, and he died on June 13, 1978. The primary cause of death was noted to be cardiac arrest, secondary to arrhythmia caused by coronary artery disease. Additional causes of death were acalculus, cholecystitis, chronic ulcerative colitis, and anemia secondary to chronic ulcerative colitis. After decedent's death, plaintiffs filed a claim under his two hospitalization policies with defendant.[3]
Both policies contained the following pre-existing condition exclusion:
"A. No Health Care allowance will be provided for:
1. services rendered during the first year of coverage for, or as a result of, any ailment, disease, or physical condition the symptoms of which exhibit themselves before the Original Effective Date; ..."
The law in this area is well settled. The courts place a stringent burden of proof on the insurer to prove that an illness which it contends is excluded from coverage as a pre-existing condition did in fact predate the stipulated effective date of the policy. Phelps v. Southern National Insurance *51 Company, 83 So.2d 463 (La.App. 2nd Cir. 1955).
Defendant's in-house physician, Dr. Edward Comer, conceded that the records clearly showed that decedent was not admitted to the hospital because of any acute coronary problem. Dr. Prosser emphasized on several occasions that, notwithstanding decedent's long history of coronary artery disease, he was hospitalized because of gallbladder disease, weight loss and anemia. Plaintiffs argue that decedent was not hospitalized for a heart condition, so the pre-existing conditions exclusion should not be applicable because he was treated for gallbladder disease and ulcerative colitis during this hospital stay. Dr. Comer agreed that decedent was hospitalized for gallbladder disease and also colitis. Dr. Prosser felt that the post-operative arrhythmia occurred in a setting of severe chemical imbalance secondary to the explosive ulcerative colitis. He agreed that there were several causes for decedent's death.
The trial court determined that the threshold question was whether the disease of the gallbladder (cholecystitis) and the colitis were pre-existing, and if so, then defendant had properly refused to indemnify decedent's hospitalization expenses.
The medical aspects of this case were submitted by depositions. The only treating physician was Dr. Prosser. He was deposed twice. The other depositions were of Dr. Comer, defendant's in-house physician, and two consultants secured by defendant, Dr. James O. Lilly and Dr. Rene A. Louapre. The two consultants were unanimous in their opinion that the cholecystitis and the colitis were pre-existing conditions. Dr. Comer was also of that opinion. Dr. Prosser felt that the cholecystitis was pre-existing. He also felt that decedent had suffered from some sort of colitis for many years, and he had treated him for same for some time. Dr. Prosser, however, had never diagnosed an ulcerative colitis prior to Dr. Baer's proctoscopic examination on decedent's terminal hospitalization. Before that time, he had characterized it as a "nonspecific colon." Plaintiffs attempt to draw a distinction between an ulcerative colitis and nonspecific colitis in order to avert the pre-existing exclusion. Both consultants felt, however, based on the records they analyzed, that decedent had suffered from ulcerative colitis for years. Dr. Comer was of the same opinion. Dr. Prosser was not sure, but said:
"I think he had had, perhaps for years, undiagnosed by me or by radiological means, some form of colitis of a serious nature involving the right part of his colon. And at the time of surgery, the trauma of anesthesia and surgery caused a flareup of this condition which then rapidly disseminated throughout the large intestine and caused the toxic megacolon, massive distension of the colon and the terrible illness that he had at that time. That's just my opinion."
In disposing of this case, the trial court held that the evidence established that colitis did exist prior to coverage, and that the anemia and weight loss could have resulted from the colitis.
In that regard, the trial court found:
"In the case at bar, however, evidence establishes that colitis did exist prior to coverage, that the anemia and weight loss displayed by the insured at the time of hospitalization could have resulted therefrom since they did not result from cancer as first feared, and that the form of colitis suffered by the patient could have been exacerbated by the trauma of surgery. Significantly, all of this evidence is adduced from the deposition of Mr. Borer's personal physician, Dr. Prosser. Though he pointed out that he had never been aware of the severity of the form of colitis which his patient actually suffered, Dr. Prosser did, nevertheless, attest to the fact that he had diagnosed the deceased's ailment as non-specific colitis, meaning he could not pinpoint the specific form present (i.e., ulcerative colitis, parasitic colitis, etc.) in 1974, three years before the insured took out the first of the two policies in dispute in the present case. Therefore, based upon the foregoing facts, the ailments for which *52 Mr. Borer was treated during his six week stay in the Baton Rouge General Hospital prior to his death in June of 1978 obviously pre-dated the coverage period of the policies under which the plaintiffs seek to be indemnified; ..."
We agree with the findings of the trial court. The record and medical evidence is quite convincing. Unfortunately, decedent suffered not only from coronary artery disease, but also from gallbladder disease and colon disease, all of which pre-dated the coverage period of the policies in question. He had been treated for these conditions periodically since 1968 and had been hospitalized on prior occasions for these abdominal complaints.
The decision of the trial court is affirmed at plaintiffs' costs.
AFFIRMED.
NOTES
[1] This is the inflammation of the colon lining, which is ulcerated by sores.
[2] This is a severe, life-threatening condition of colitis with inflammatory reaction inside the colon's wall, usually involving the entire wall which becomes dilated and enlarged, and does not function properly.
[3] Policy No. 1 was an individual policy dated October 28, 1977, No. 029010X1. Policy No. 2 was a group policy obtained through decedent's employer, Sizeler Realty, on April 1, 1978, No. 4331676781, group no. 46895247. Decedent had completed application forms for each policy but the applications were not attached to his individual policy or to the certificate of group insurance when issued and received by him.