921 F.2d 692
 Reuben RIVERA and Kimberly Rivera, a minor, by her father
and next friend, Reuben Rivera, Plaintiffs-Appellees,
v.
BENEFIT TRUST LIFE INSURANCE COMPANY, a corporation, and
General Engineering Works, Incorporated, a
corporation, Defendants-Appellants.
 Nos. 89-3419, 90-1247.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 5, 1990.
Decided Jan. 2, 1991.
 
 Richard C. Leng, Chicago, Ill., for plaintiffs-appellees.
 Joseph J. Hasman, Daniel A. Engel, Reid J. Rozen, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendants-appellants.
 Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and PELL, Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 This appeal involves the denial of medical benefits under a group health insurance policy. Defendants, Benefit Trust Life Insurance Company ("Benefit Trust") and General Engineering Works, Inc. ("General Engineering"), appeal from the district court's orders granting judgment in favor of plaintiffs and awarding plaintiffs prejudgment interest and attorneys' fees.
 
 I. BACKGROUND
 
 2
 As a result of a ruptured appendix, Kimberly Rivera underwent an appendectomy in June 1984. In July, Kimberly was examined by her physician, Dr. Kiefer, in connection with her progress subsequent to the appendectomy. Kimberly's mother, Cathy Rivera, accompanied her daughter to this appointment and Dr. Kiefer informed them that Kimberly had recovered well from the surgery. However, during the examination Dr. Kiefer told Kimberly and Mrs. Rivera that Kimberly had a slight curvature of her spine. Dr. Kiefer assured them that this condition was very common in adolescent girls, but that they should "keep an eye on it." Shortly after the July appointment, Mrs. Rivera informed Reuben Rivera, Kimberly's father, that Kimberly had recovered well from the appendectomy and that Dr. Kiefer had found a slight curvature of Kimberly's spine which was a common condition in adolescent girls.
 
 
 3
 In August 1984, Mr. Rivera applied to Benefit Trust for major medical insurance coverage for his wife and children under the group plan offered by his employer, General Engineering. The application form requested the applicant, to the best of his knowledge and belief, to disclose certain types of existing medical conditions of the proposed insureds. One of the questions asked: "Has any person proposed for coverage ever had or been treated for or consulted a physician about ... [a]rthritis, rheumatism or gout; back, spine or skeletal disorder; bone, muscle, or joint disorder?" Mr. Rivera answered "No." Mr. Rivera answered affirmatively when asked, "Are all named persons requesting coverage now in good health, free from any physical defect, injury or disease, and not under medical care?" Benefit Trust then accepted the Rivera family for dependent coverage.
 
 
 4
 Sometime in December 1984, Kimberly began experiencing back pain. Mrs. Rivera took Kimberly to see Dr. Kiefer in January 1985, and he referred Kimberly to a specialist. The specialist diagnosed Kimberly's condition as scoliosis--a lateral curvature of the spine--and informed the Riveras that surgery would be required. In July 1985, Kimberly underwent surgery that successfully corrected her condition. Mr. Rivera submitted claims in connection with Kimberly's treatment to Benefit Trust for payment of medical benefits under the policy. Following a claims investigation, Benefit Trust denied coverage for medical costs incurred for treatment of Kimberly's scoliosis. Benefit Trust's denial of coverage was based on its position that Mr. Rivera had misrepresented Kimberly's back condition on the application for the policy that he had completed in August 1984.
 
 
 5
 The Riveras filed suit against Benefit Trust and General Engineering in Illinois state court seeking recovery of approximately $22,000 in unpaid medical bills relating to Kimberly's treatment for scoliosis. Because plaintiffs' state law claim is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1001 et seq., the defendants achieved removal to federal jurisdiction in the district court through 28 U.S.C. Sec. 1446. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62, 107 S.Ct. 1542, 1545, 95 L.Ed.2d 55 (1987); Lister v. Stark, 890 F.2d 941, 944 (7th Cir.1989).
 
 
 6
 After a bench trial, the district court granted judgment in favor of plaintiffs and awarded $22,018.71 in compensatory damages, $11,140.34 in prejudgment interest, and $16,203.75 in attorneys' fees. Defendants contend that the district court erroneously found that Reuben Rivera had not misrepresented his daughter's medical condition, and that the district court's award of prejudgment interest and attorneys' fees was an abuse of discretion. This court has jurisdiction under 28 U.S.C. Sec. 1291 and we now affirm.
 
 II. DISCUSSION
 A. Misrepresentation
 
 7
 In defending the denial of benefits for Kimberly's treatment, defendants argue that Reuben Rivera misrepresented his daughter's medical condition on his application for coverage. Defendants rely on Illinois law in seeking to avoid liability under plaintiff's policy. Under Illinois law, a misrepresentation in an application for insurance is not of itself grounds for denial of coverage. Roberts v. Nat'l Liberty Group of Cos., 159 Ill.App.3d 706, 111 Ill.Dec. 403, 512 N.E.2d 792 (1987). However, an insurance company may deny coverage because of a misrepresentation in an application if the misrepresentation "shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard to the company." ILL.REV.STAT. ch. 73, para. 766.[1]
 
 
 8
 Defendants argue that they properly denied coverage under Illinois law because the curvature of Kimberly's spine was material to their acceptance of the application. Moreover, the parties stipulated to the materiality of Kimberly's medical condition and further stipulated that Benefit Trust would not have issued a policy under these circumstances without a rider or limitation. Nevertheless, we need not reach the issue of materiality unless we are willing to reverse the district court finding that there was no initial misrepresentation. The Illinois statute under which defendants seek to avoid liability on the policy first requires the existence of a misrepresentation. The misrepresentation bars recovery if it is either made with the actual intent to deceive or is material to acceptance of the risk. The trial judge found that Reuben Rivera did not misrepresent his daughter's medical condition on the application for insurance and therefore since there was no misrepresentation the question of materiality is irrelevant.
 
 
 9
 In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." The defendants do not allege, nor do we find, that the plan conferred discretionary authority upon the administrator and we therefore review the denial of benefits by defendants under a de novo standard of review. Exbom v. Central States, SE & SW Areas Health & Welfare Fund, 900 F.2d 1138, 1141 (7th Cir.1990). However, in conducting our review, we are bound by the district court's factual findings unless they are clearly erroneous. FED.R.CIV.P. 52(a); see also Fallon v. Illinois, 882 F.2d 1206 (7th Cir.1989). Rule 52(a) demands even greater deference to the trial court's factual findings when they are based upon determinations of credibility. Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).
 
 
 10
 The trial judge had the opportunity to assess the credibility of Reuben Rivera at trial and found that he answered truthfully the questions in the application for insurance. Rivera testified that although his wife mentioned to him the doctor's statement concerning Kimberly's slight curvature of the spine, he was more concerned with his daughter's recovery from the appendectomy. Dr. Kiefer did not use the term "scoliosis" when talking to Mrs. Rivera, nor did he recommend any treatment for the slight curvature. Additionally, Dr. Kiefer indicated that a slight curvature of the spine was common among adolescent girls. Rivera testified that at the time he filled out the application for insurance he had forgotten about the matter of the curvature of Kimberly's spine. The trial judge stated that he believed Rivera's testimony that he did not recall his wife's comment at the time he filled out the application. The trial judge further found that even if Rivera remembered the comment, the slight curvature of Kimberly's spine was not a disorder or defect at that time and therefore Rivera answered the application truthfully. The trial judge accepted Rivera's characterization of the events and we do not find the trial judge's factual determination clearly erroneous. Based upon our acceptance of the district court's findings of fact, we are unconvinced that Rivera misrepresented his daughter's medical condition on the application for insurance.
 
 B. Prejudgment Interest
 
 11
 The award of prejudgment interest for a federal law violation is governed by federal common law. Gorenstein Enters., Inc. v. Quality Care-USA, Inc., 874 F.2d 431 (7th Cir.1989). The Supreme Court has held that "[p]rejudgment interest is an element of complete compensation." West Virginia v. United States, 479 U.S. 305, 310-11, 107 S.Ct. 702, 706-07, 93 L.Ed.2d 639 (1987); see also General Motors Corp. v. Devex Corp., 461 U.S. 648, 655-56, 103 S.Ct. 2058, 2062-63, 76 L.Ed.2d 211 (1983). The growing recognition of the time value of money has led this court to rule that "prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay." Gorenstein, 874 F.2d at 436 (emphasis added). This presumption in favor of prejudgment interest awards is specifically applicable to ERISA cases. Lorenzen v. Employees Retirement Plan of Sperry & Hutchinson Co., 896 F.2d 228 (7th Cir.1990).
 
 
 12
 The defendants argue that the district court abused its discretion in awarding prejudgment interest on the judgment against them. The premise of defendants' argument is that the plaintiffs did not pay the medical bills at issue and therefore they did not forego the use of the money. However, due to defendants' refusal to pay the medical benefits under the plan the plaintiffs incurred a judgment for surgeons' fees (which is accruing interest) and suffered impaired credit. Moreover, prejudgment interest is designed not only to fully compensate the victim, but also to prevent unjust enrichment. Id. at 236. The ability of defendants to earn interest on funds which should have been expended to pay plaintiffs' medical benefits under the policy would result in the unjust enrichment of defendants. Relieving defendants from the payment of prejudgment interest would create an incentive for insurers to delay payment and would undercompensate victims by forcing them to absorb expenses incurred as a result of the delay. We therefore find that the defendants have not presented evidence sufficient to overcome the presumption of an award of prejudgment interest.
 
 
 13
 Defendants also contend that the failure of the plaintiffs to raise the issue of prejudgment interest at trial was prejudicial. However, defendants raised this as a new issue in their reply brief--not in response to any argument in plaintiffs' brief--when the issue had not been raised in their preliminary brief. Circuit Rule 28(f) states that "[a] reply brief shall be limited to matter in reply." 7TH CIR.R. 28(f). Arguments for reversal must appear in the initial brief of appellant so that the appellee may have an opportunity to address them. FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1025-26 (7th Cir.1988). Thus, defendants' failure to raise the issue of prejudice in their preliminary brief constitutes waiver and we need not address this argument.
 
 C. Attorneys' Fees
 
 14
 ERISA provides that the court may, in its discretion, award reasonable attorneys' fees to either party. 29 U.S.C. Sec. 1132(g)(1). Defendants' initial attack on the district court's award of attorneys' fees to plaintiffs is that the failure of plaintiffs to include attorneys' fees as a disputed issue in the pretrial memorandum constituted waiver of the right to request attorneys' fees in a post-trial motion. However, we have held that the provision for attorneys' fees under ERISA is not in the nature of a punitive damage award, but rather is analogous to an assessment of costs under Rule 54. FED.R.CIV.P. 54(d); Bittner v. Sadoff & Rudoy Indus., 728 F.2d 820, 828 (7th Cir.1984). Rule 54(d) provides, "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." FED.R.CIV.P. 54(d). Therefore, a request for attorneys' fees under ERISA may be timely made by post-trial motion under Rule 54(d). Bittner, 728 F.2d at 828.
 
 
 15
 Defendants argue that they were prejudiced by the plaintiffs' failure to include attorneys' fees as a contested issue in the pretrial memorandum. However, plaintiffs made a demand for attorneys' fees in their complaint and first amended complaint. In addition, defendants sought removal to federal court on grounds of preemption by ERISA and ERISA explicitly provides for attorneys' fees at the court's discretion. We therefore find that the defendants were not prejudiced by plaintiffs' request for attorneys' fees through a timely post-trial motion.
 
 
 16
 Defendants next contend that the award of attorneys' fees was not warranted under the applicable standards for recovery of attorneys' fees and therefore the award constituted an abuse of discretion. In awarding attorneys' fees to the prevailing plaintiff, the trial judge employed the five-factor analysis of Janowski v. International Bhd. of Teamsters Local 710, 673 F.2d 931 (7th Cir.1982), vacated on other grounds, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); see also Chicago Painters & Decorators Pension Fund v. Karr Bros., 755 F.2d 1285 (7th Cir.1985); Marquardt v. North Am. Car Corp., 652 F.2d 715 (7th Cir.1981). The five factors are:
 
 
 17
 (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.
 
 
 18
 Janowski, 673 F.2d at 940. In applying the five-factor test, the trial judge found that although the defendants had acted in good faith, this case was not "a close case" and the defendants had been "stubborn" in their perception of the merits after discovery had been concluded. In addition, the attorneys' fees would be paid out of the assets of the defendants rather than from a fixed welfare fund and the award would thereby have a deterrent effect on insurers contemplating the denial of benefits in similar circumstances.
 
 
 19
 The five-factor test for determining awards for attorneys' fees under ERISA was examined in Bittner and this court concluded that the five-factor test "is oriented toward the case where the plaintiff rather than the defendant prevails and seeks an award of attorney's fees." Bittner, 728 F.2d at 829. Bittner proposed an alternative test, based upon the standards under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412(d)(1)(A), under which a prevailing party is awarded attorneys' fees "unless the loser's position, while rejected by the court, had a solid basis--more than merely not frivolous, but less than meritorious." Bittner, 728 F.2d at 830. Both tests have been applied in this circuit in evaluating requests for attorneys' fees in ERISA cases. See Nichol v. Pullman Std., Inc., 889 F.2d 115 (7th Cir.1989); Giardono v. Jones, 867 F.2d 409 (7th Cir.1989). In applying the five-factor test, the district court indicated that the distinction between the two approaches would not be meaningful. We therefore find that the trial judge's award of attorneys' fees to plaintiff based upon the five-factor analysis was not an abuse of discretion.
 
 
 20
 Defendants also challenge the reasonableness of the attorneys' fees awarded. We review under an abuse of discretion standard the district court's findings of the reasonableness of attorneys' fees. Nanetti v. University of Ill. at Chicago, 867 F.2d 990, 995 (7th Cir.1989). Defendants contend that since the hourly rate charged by defendants' counsel was substantially lower than that charged by one of plaintiffs' counsel, the award of fees to plaintiffs' counsel was excessive. However, the rate charged by defendants' counsel is not germane to a determination of the reasonableness of plaintiffs' attorneys' fees. The trial judge found that the hourly rate charged by plaintiffs' counsel was reasonable based upon the prevailing market rates and counsel's experience. Defendants also argue that the number of hours charged by plaintiffs' counsel is excessive. The district court found that the number of hours expended by plaintiffs' counsel was "entirely reasonable" and in support of this finding noted that plaintiffs not only bore the burden of proof, but also presented the only witnesses at trial. The trial judge did not abuse his discretion in finding plaintiffs' attorneys' fees reasonable.
 
 
 21
 For the foregoing reasons the judgment of the district court is
 
 
 22
 AFFIRMED.
 
 
 23
 PELL, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 24
 Being of the opinion that the district court improperly granted attorney fees, I respectfully dissent from that part of the majority opinion.
 
 
 25
 While I am not dissenting from the rest of the majority opinion, it is necessary to look at the factual situation involved in the district court's grant of judgment that there was liability under the insurance policy.
 
 
 26
 The scenario begins with the examination by Dr. Kiefer. This was not a situation where as Kimberly and her mother were leaving, Dr. Kiefer stopped them and said, "Oh, by the way, there is a slight curvature of the spine but it's minor and don't worry about it." According to Dr. Kiefer's testimony: (a) he informed Mrs. Rivera of Kimberly's curvature of the spine; (b) he told Mrs. Rivera that the Riveras should check again in six months to determine the progress in the condition; (c) he recommended the six-month checkup to give enough time to see the progress of the condition; (d) he advised Mrs. Rivera to come in sooner than six months, if she noticed the condition progressing sooner or becoming a problem; and (e) the condition was "maybe a precursor of something more significant." Dr. Kiefer further testified that he told Mrs. Rivera to keep an eye on the condition, and to call him if there was a problem, and that in his mind, Mrs. Rivera was aware that the curvature of the spine was a condition to be looked after.
 
 
 27
 She told her husband of the conversation. Nevertheless, less than a month later, when Reuben Rivera was applying for the insurance, he had forgotten completely that there was anything in the nature of a curvature of the spine although the fact that what was known to the doctor and was known to Mrs. Rivera was material to the company's consideration of issuance.
 
 
 28
 Looking at the timing involved, less than a month from when Mrs. Rivera was told and then related what she was told to her husband, that he would simply have forgotten all about it I regard as incredible. This is particularly so when he remembered and did disclose on the application "various cuts and abrasions" and "sore throats."
 
 
 29
 Although on the main award of coverage, whether I agree with it or not, I feel bound to abide by the judge's determination of credibility. I do, however, consider the preceding statement of facts important with regard to the disposition of the attorneys' fees issue. These facts were developed at the time the defendant denied coverage, and were not refuted during pre-trial discovery. It was not until the conclusion of the trial itself, when the experienced trial judge found Reuben Rivera's forgetfulness credible and entered judgment, that there was any reason for the company to be aware that it might be considered as not being in good faith in denying recovery.
 
 
 30
 I think we must look at the situation as it appeared to the insurance company at all times until judgment and until that time there was good reason for the company to believe that Reuben Rivera had materially and intentionally misrepresented the facts on his application.
 
 
 31
 I also find myself somewhat perplexed by the facts as set forth in the majority opinion that the trial judge found that although the defendants had acted in good faith the case was not a close one and that the defendants had been stubborn in their perception of the merits after discovery had been concluded. This appears to me to be full of contradictions. I am not quite sure how they could have acted in good faith and still have been stubborn in not seeing the merits of plaintiff's position as found by the district judge. As I have already indicated, this must have appeared a close case to the insurance company until the judge characterized it otherwise in the final judgment. Finally, the characterization of stubborn is simply a conclusion and I am unable to find any support in the record for the conclusion that the defendants' eyes had been opened to the weakness of their case by virtue of the completion of discovery. It seems obvious to me that they continued to think that Rivera was misrepresenting the facts on his application down to the point of the entry of judgment. That seems to be the point at which they discovered that their perception of the merits was incorrect, at least in the eyes of the judge.
 
 
 32
 It appears to me that the Riveras by receiving attorneys' fees are being made whole beyond any reasonable expectation and, therefore, that part of the judgment, at the least, should be reversed.
 
 
 
 [1]
 ERISA provides that federal law preempts state law in actions involving qualified employee benefit plans. 29 U.S.C. Sec. 1144(a); Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275, 278 (7th Cir.1990). However, both plaintiffs and defendants concede that a material misrepresentation in an application for insurance would constitute a valid defense to a claim for denial of benefits under ERISA