619 So.2d 821 (1993)
Charles R. CRAMER, Jr. and Neva Gage Cramer
v.
ASSOCIATION LIFE INSURANCE COMPANY, INC.
No. 92 CA 1026.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
*823 Christine Lipsey, Baton Rouge, for defendant-appellant TMG Life Ins. Co., formerly Association Life Ins. Co.
Before CARTER, LeBLANC and PITCHER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment awarding insurance benefits to plaintiffs for medical expenses incurred by their daughter.

FACTS
Charles R. Cramer, Jr. was employed by Advertising By Computer, Inc. ("ABC") in July of 1985, when ABC applied for a group health insurance policy with Association Life Insurance Company ("ALIC").[1] Coverage became effective as to ABC on August 1, 1985. The policy was effective as to Charles Cramer's daughter, Noel, a covered dependent under the policy, on August 3, 1985.[2]
Noel was born on January 23, 1984. Dr. William Palfrey, a pediatrician, treated Noel from February of 1984 through July of 1985 for various complaints, including fever, coughing, diarrhea, pneumonitis, poor weight gain, oral thrush, and digestive problems. On July 29, 1985, Dr. Palfrey determined that Noel had hemolytic anemia and referred her to Dr. Shelia Moore, a hemotologist at Earl K. Long Hospital. Dr. Moore treated this problem and discharged Noel on August 2, 1985. On August 26, 1985, Noel was readmitted to Earl K. Long Hospital. She was then transferred to Texas Children's Hospital in Houston, Texas, on August 30, 1985. After a couple of weeks of testing, on approximately September 15, 1985, Noel was diagnosed with severe combined immunodeficiency (SCID). On November 17, 1985, Noel died from complications resulting from SCID.
Between September and December of 1985, the Cramers sought benefits under ALIC's policy to pay medical expenses incurred for Noel's care and treatment at TCH. On April 10, 1986, the Cramers made written demand for payment of these expenses under the ALIC policy. ALIC denied coverage based on its "preexisting condition" policy exclusion, which disallows payment of benefits for any sickness for which the insured received medical care or treatment within ninety (90) days before the effective date of the policy.
On September 24, 1986, the Cramers filed the instant suit for damages against ALIC to recover benefits allegedly due under the health insurance policy for certain medical expenses incurred for the care and treatment of their daughter, Noel.[3]
The matter was tried on September 10, 1991. The trial court rendered judgment on December 17, 1991, concluding that ALIC failed to carry its burden of proving the affirmative defense of a preexisting condition, and awarded plaintiffs the sum of $220,400.00, together with legal interest and costs. The trial court denied plaintiffs' request for attorney's fees under the Employee Retirement Income Security Act (ERISA). ALIC appealed from the trial *824 court judgment, assigning two specifications of error as follows:
1. The trial court erred in finding coverage under ALIC's policy.
2. The court erred in awarding prejudgment interest in this ERISA case.
Plaintiffs answered the appeal, assigning two specifications of error as follows:
1. The trial court erred in denying plaintiffs' claim for attorney's fees.
2. The trial court erred in refusing to consider evidence of ALIC's amendments to its pre-existing illness clause in January of 1988, an amendment which was proffered at trial by plaintiffs.

COVERAGE
ALIC asserts that the medical expenses in question were not covered under its policy because treatment for the condition (SCID) had been received within ninety (90) days immediately preceding the effective date of coverage and were therefore excluded from coverage under the terms of the policy.
The courts impose a stringent burden on the insurer to prove by a preponderance of the evidence that an exclusionary clause is applicable and, in the case of a health policy, that the alleged preexisting condition did in fact predate the effective date of the policy. Cheramie v. Board of Trustees, State Employees Group Benefit Program, 482 So.2d 742, 746 (La.App. 1st Cir.1985), writ denied, 486 So.2d 734 (La. 1986); Casey v. Proprietors Life Assurance Company, 470 So.2d 339, 340 (La. App. 5th Cir.1985); Estate of Borer v. Louisiana Health Service & Indemnity Company, 431 So.2d 49, 50 (La.App. 1st Cir. 1983). The evidence required to meet this burden of proof must be certain and decisive, leaving no room for speculation or assumption. Bonura v. United Bankers Life Insurance Company, 552 So.2d 1248, 1254 (La.App. 1st Cir.1989), writ denied, 558 So.2d 1125 (La.1990); McCord v. Time Insurance Company, 521 So.2d 558, 560 (La.App. 1st Cir.1988); Dorsey v. Board of Trustees, State Employees Group Benefits Program, 482 So.2d 735, 737 (La.App. 1st Cir.1985), writs denied, 486 So.2d 735, 736 (La.1986). On review, the appellate court should not disturb factual findings in the absence of manifest error or unless clearly wrong. Stobart v. State of Louisiana, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993); Dear v. Blue Cross of Louisiana, 511 So.2d 73, 74 (La.App. 3rd Cir.1987).
In the instant case, under "Exclusions and Limitations," ALIC's policy provided as follows:
Benefits are not payable under this Certificate for:
a) a Sickness or Injury for which the Insured received medical care or treatment within 90 days before the Effective Date of coverage. This limitation will apply until the Insured completes the earlier of:
(i) a period of 90 consecutive days, beginning of the Effective Date of coverage, during which no medical care or treatment for that Sickness or Injury is received; or,
(ii) a period of 12 consecutive months of coverage under the Policy.
Treatment includes the taking of any prescription drug.
Furthermore, the policy defines "sickness" as:
a) Any condition of the body which hinders and prevents an organ from functioning normally;
b) any affliction of the body which deprives it temporarily of the ability to fulfill its usual functions; or
c) Complications of Pregnancy.

Sickness must be diagnosed by a Physician and cannot be the result of an accident.
Sickness resulting from or contributed to by the same or a related cause will be considered one Sickness. (Emphasis added.)
Thus, in order to exclude coverage, ALIC must prove that Noel Cramer received medical care or treatment for the sickness (SCID) within ninety (90) days immediately preceding the effective date of coverage.
Dr. William Palfrey, Noel's pediatrician, testified that Noel was ill on and off since *825 birth with a variety of complaints. He treated Noel from February to July of 1984, for fever, coughing, diarrhea, pneumonitis, poor weight gain, oral thrush, colds, rashes, and digestive problems. In July of 1984, Dr. Palfrey determined that Noel needed further evaluation and sent her to Dr. Will Waring at Tulane Medical Center in New Orleans. After being treated at Tulane for several months, Noel returned to Dr. Palfrey for a check-up on September 21, 1984. At that time, Noel had a congestive cough and a loose stool. Dr. Palfrey treated Noel for these problems and continued treating her for recurring problems. On July 29, 1985, Dr. Palfrey determined that Noel had hemolytic anemia and referred her to Dr. Shelia Moore, a hemotologist at Earl K. Long Hospital in Baton Rouge.
Dr. Moore, a pediatrician specializing in hematology and oncology, testified that she treated Noel prior to the effective date of the insurance policy. She admitted Noel into Earl K. Long Hospital on July 29, 1985. After bloodwork and a series of tests, Dr. Moore diagnosed Noel with autoimmune hemolytic anemia. Dr. Moore then treated Noel for that illness and discharged her on August 2, 1985.
Dr. Moore testified that she did not treat Noel for SCID. Dr. Moore stated that she treated and eliminated the problem that was originally causing Noel's anemia. Dr. Moore indicated that autoimmune hemolytic anemia can be a symptom of SCID, "but it can sit there by itself and do perfectly well and most of the time does." Dr. Moore noted that the only treatment for SCID is a bone marrow transplant and that a transplant was not necessary during her treatment of Noel.
On August 26, 1985, Noel was admitted to Earl K. Long Hospital with diarrhea. The resident on call determined that Noel needed a colonoscopy and made the following diagnoses: (1) right middle lobe pneumonia, (2) salmonella diarrhea, and (3) immunocompromised patient.[4] When Noel's condition did not improve, she was transferred to the Texas Children's Hospital (TCH) in Houston, Texas where she was admitted by the gastroenterology service on August 30, 1985.
Dr. William T. Shearer, Chief of Immunology at TCH, testified that when Noel was admitted into the hospital on August 30, 1985, she was experiencing gastrointestinal bleeding. After a couple of weeks of testing, on approximately September 15, 1985, Noel was diagnosed as having SCID, a congenital condition wherein the body lacks the ability to fight infection. Dr. Shearer indicated that the only treatment for SCID is a bone marrow transplant. Despite two bone marrow transplants performed at TCH, Noel passed away on November 17, 1985, due to complications resulting from SCID.
Dr. Shearer testified that the nature and character of Noel's treatment changed once she was diagnosed with SCID. Dr. Shearer's testimony reveals that although Noel was treated for a variety of symptoms prior to being admitted into TCH, she was not treated for SCID prior to the diagnosis.
Furthermore, Doctors Shearer, Palfrey, and Moore testified that the care or treatment of some of the symptoms or manifestations of a sickness is not the care or treatment of the sickness itself.
A review of the testimony and the record reveals that Noel was not treated for SCID prior to the effective date of ALIC's policy, but that she was treated for other complaints which now appear to have been symptoms of SCID. However, ALIC's policy did not exclude from coverage the treatment for "symptoms" of an illness. Therefore, the trial court was not manifestly erroneous in finding that ALIC failed to establish the applicability of the policy exclusion for a preexisting condition.

PREJUDGMENT INTEREST
ALIC contends that the trial court abused its discretion in awarding prejudgment interest. ALIC reasons that plaintiffs did not pay the medical bills at issue *826 and therefore did not forego the use of the money. Furthermore, ALIC reasons that plaintiffs were not charged interest on the bills, that no judgments had been obtained against them for nonpayment of the bills, and that they had not been turned in to a credit reporting agency.
The award of prejudgment interest for a federal law violation is governed by federal law. Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir.1989). It is within a court's discretion to award prejudgment interest. Kann v. Keystone Resources, Inc., 575 F.Supp. 1084, 1095 (W.D.Penn.1983). With the growing awareness of the time value of money, the trend is running in favor of such awards. Rivera v. Benefit Trust Life Insurance Company, 921 F.2d 692, 696 (7th Cir.1991). Some courts have ruled that prejudgment interest is presumptively available to victims of federal law violations because, without it, compensation of the plaintiff is incomplete, and the defendant has an incentive to delay. Rivera v. Benefit Trust Life Insurance Company, 921 F.2d at 696; Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d at 436. The presumption in favor of prejudgment interest awards is specifically applicable to ERISA cases. Rivera v. Benefit Trust Life Insurance Company, 921 F.2d at 696; Lorenzen v. Employees Retirement Plan of Sperry and Hutchinson Company, 896 F.2d 228, 236 (7th Cir. 1990).
Prejudgment interest is designed not only to fully compensate the victim, but also to prevent unjust enrichment. Rivera v. Benefit Trust Life Insurance Company, 921 F.2d at 697. Unjust enrichment can be an independent ground for awarding prejudgment interest. Lorenzen v. Employees Retirement Plan of the Sperry and Hutchinson Company, Inc., 896 F.2d at 236; Short v. Central States, Southeast & Southwest Areas Pension Fund, 729 F.2d 567, 576 (8th Cir.1984). The ability of ALIC to earn interest on funds which should have been expended to pay plaintiffs' medical bills under the policy would result in the unjust enrichment of ALIC. Relieving ALIC from the payment of prejudgment interest would create an incentive for insurers to delay payment and would undercompensate victims by forcing them to absorb expenses incurred as a result of the delay. See Rivera v. Benefit Trust Life Insurance Company, 921 F.2d at 697. Therefore, the trial court did not err in awarding plaintiffs prejudgment interest.
Having determined that the trial court correctly awarded prejudgment interest, we must determine the rate at which the interest should be calculated. In Dependahl v. Falstaff Brewing Corporation, 653 F.2d 1208, 1219 (8th Cir.1981), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), and Kann v. Keystone Resources, Inc., 575 F.Supp. at 1096, the courts held that the rate of prejudgment interest in an ERISA case is a federal question which must be governed by federal law. In the instant case, the trial court apparently applied state law in setting the award for prejudgment interest, which was error. Therefore, we must determine the appropriate prejudgment interest rate under federal law.
There is no federal statutory interest rate on prejudgment interest; however, 28 U.S.C. § 1961 (1976) fixes the interest rate on post judgment interest for civil judgments in district courts. Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d at 436; Dependahl v. Falstaff Brewing Corporation, 653 F.2d at 1219. Section 1961 fixes the interest rate for postjudgment interest at the rate on 52-week Treasury bills at the last auction of those bills immediately prior to the entering of judgment.[5]Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d at 436. Section 1961 has also been held applicable to pre judgment interest awards. See Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d at *827 436; Daniels v. Essex Group, Inc., 740 F.Supp. 553, 561 (N.D.Ind.1990); Amoco Production Company v. United States, 663 F.Supp. 998, 1001-02 (D.Utah 1987).
Under section 1961, prejudgment interest is to be awarded at the rate of interest on 52-week treasury bills at the last auction immediately prior to the date of the first demand made by plaintiffs for the benefits. Kann v. Keystone Resources, Inc., 575 F.Supp. at 1096. In the instant case, plaintiffs alleged that on April 10, 1986, they made demand upon ALIC, by certified mail, return receipt requested, for payment of the contested medical expenses. In answer, ALIC acknowledged receipt of the letter. Therefore, we amend that portion of the trial court judgment, which awarded interest at the state's statutory rate, to award prejudgment interest, retroactive to April 10, 1986, at the rate of 7.06% per annum (the rate in effect immediately prior to plaintiffs' demand on April 10, 1986).[6]

ATTORNEY'S FEES
Plaintiffs contend that the trial court erred in refusing to award attorney's fees under ERISA. 29 U.S.C. § 1132(g)(1) provides that in an ERISA action by a participant, beneficiary, or fiduciary, the court, in its discretion, may award attorney's fees to either party. The Fifth Circuit, in Iron Workers Local # 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir.1980), set forth the following factors which a court should consider in determining whether to award attorney's fees to a particular party: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. The court indicated that no one of these factors is necessarily decisive, but that they should all be addressed in determining whether to award attorney's fees. Iron Workers Local No. 272 v. Bowen, 624 F.2d at 1266.
In the instant case, the trial judge determined that plaintiffs were not entitled to attorney's fees. In his reasons for judgment, the trial judge noted that ALIC "acted in good faith in a very complex medical situation in denying benefits to plaintiffs." After reviewing the record and considering the factors listed above, we conclude that the trial judge did not abuse his much discretion is denying plaintiffs' request for attorney's fees.
Because we have concluded that the trial court correctly determined the issue of coverage, we find it unnecessary to address plaintiffs' contention that the trial court erred in refusing to consider evidence of ALIC's 1988 amendments to its preexisting illness clause.

CONCLUSION
For the reasons set forth above, that portion of the trial court judgment awarding interest at the state's statutory rate is amended to award interest, retroactive to April 10, 1986, at the rate of 7.06% per annum (the rate on 52-week Treasury bills at the last auction of those bills prior to plaintiffs' demand for payment of the benefits on April 10, 1986). In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the defendant.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Association Life Insurance Company is now TMG Life Insurance Company.
[2] Noel had been hospitalized from July 29 to August 2, 1985. ALIC's certificate of insurance provides that if a dependent is confined on the date that coverage would become effective, coverage will not become effective as to that dependent until confinement ends. Hospitalization is considered "confinement" under the terms of the policy.
[3] Originally, plaintiffs also requested penalties and mandatory attorney's fees under LSA-R.S. 22:657 for ALIC's "arbitrary and capricious" refusal to pay medical benefits under the policy. However, the Louisiana Supreme Court, in Cramer v. Association Life Insurance Company, 569 So.2d 533 (La.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991), held that the insurance plan at issue in the instant case fell within the provisions of ERISA and that LSA-R.S. 22:657, as applied to an ERISA plan, is preempted by the civil enforcement provisions of ERISA.
[4] Dr. Moore explained that "immunocompromised" means that chemotherapy drugs were being used on the patient and that they had compromised her immune system.
[5] In 1982, Congress amended section 1961 to prescribe the treasury bill rate in lieu of the state's statutory rate of interest.
[6] In a memorandum addressed to all clerks of court, dated July 26, 1991, from A.L. Lloyd, Acting Chief of the Accounting Division of the Administrative Office of the United States Courts, the rate of interest for March 13, 1986, (the rate settled immediately prior to April 10, 1986) was 7.06%.