United States Court of Appeals,

Fifth Circuit.

No. 92-9581.

The TRAVELERS INSURANCE COMPANY, Plaintiff-Appellee Cross-Appellant,

v.

LILJEBERG ENTERPRISES, INC., Defendant-Appellant Cross-Appellee.

Nov. 26, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before SNEED*, REYNALDO G. GARZA, and JOLLY, Circuit Judges.

SNEED, Senior Circuit Judge:

This is a case involving a large landlord-lender and a major corporate tenant. Defendant Liljeberg Enterprises, Inc. (LEI), the tenant, appeals the district court order granting Plaintiff Travelers Insurance Company (Travelers), the landlord-lender, summary judgment in Travelers's action to enforce two leases, 799 F.Supp. 641 (E.D.La.1992).

Travelers cross appeals on the grounds that (1) the district court should have awarded accelerated rent with interest according to Louisiana law from the date of LEI's default rather than legal interest from the date of judgment and (2) the district court should have awarded attorney fees.

We affirm the district court's grant of summary judgment to Travelers but remand for entry of judgment to award Travelers prejudgment interest.

I.

*FACTS AND PRIOR PROCEEDINGS*

The facts pertinent to the leases at issue are not in dispute. LEI initially leased space in the St. Jude Medical Office Building ("the building") on May 1, 1985, from the St. Jude Medical Office Building Limited Partnership ("Partnership"). Under this first lease, LEI rented 11,893 square feet of the building for a ten-year term from August 1, 1985, to July 31, 1995, at a monthly rate of $14,866.25. The Partnership was authorized to grant a mortgage on the building to an "Institutional

---

*Senior Circuit Judge of the Ninth Circuit, sitting by designation.

Mortgagee," defined to include insurance companies like Travelers.

On October 10, 1985, Travelers loaned the Partnership $25 million, and the Partnership executed and delivered to Travelers an interest-bearing promissory note in that amount plus interest. The Partnership granted Travelers a mortgage on the building and assigned all rents to be paid on leased spaces in the building to Travelers.

On May 1, 1987, LEI entered into a second lease with the Partnership for an additional 1,800 square feet in the building. This lease was for a five-year term and had a monthly rental of $2,250; it also was subject to the lease assignment and was identical in form to the first lease.

In March 1990, the Partnership defaulted on its payments to Travelers. Travelers filed suit against the Partnership in June 1990.[1] At public auction on October 18, 1991, the building was sold to Travelers, the only bidder. Acting pursuant to section 20(g)[2] of the first and second leases, Travelers delivered to LEI two proposed leases on November 15, 1991. LEI refused to sign the leases or pay any monthly rentals.

On December 11, 1991, Travelers sent LEI a notice of default. LEI neither responded nor paid the outstanding rental. Travelers then elected to accelerate all rent payments pursuant to section 22 of the leases. On January 6, 1992, Travelers filed a complaint against LEI in district court seeking a declaratory judgment that the proposed leases were valid and enforceable and seeking damages in the amount of all accelerated rent due under the leases with contractual interest, costs, and attorney fees. LEI answered the complaint and denied liability.

---

[1] In this foreclosure action against the Partnership (*Travelers Ins. Co. v. St. Jude Hosp.,* No. 90-1983), the district court entered partial summary judgment for Travelers, recognized its mortgage on the building, and directed that the property be sold.

[2] Section 20(g) of the leases provides:

> [I]n the event of the termination of this Lease or of any succeeding lease made pursuant to the provisions of this clause prior to the expiration date, Lessee will enter into a new lease of the Leased Premises with the Institutional Mortgagee for the remainder of the term of this Lease, effective as of the date of such termination, at the rent and additional rent and upon the covenants, agreements, terms, provisions and limitations herein contained provided such Institutional Mortgagee makes written request upon the Lessee for such new lease within thirty (30) days from the date of such termination.

Travelers moved for summary judgment on June 16, 1992. LEI submitted its opposition response on July 7, 1992, with a supporting affidavit from its president, who claimed that Travelers failed to deliver possession of the premises. Travelers's motion was taken under consideration by the district court on July 15, 1992. On July 17, 1992, Travelers submitted its reply memorandum;[3] exhibits were attached, including an affidavit[4] of Yvette Maher, the building's property manager. Maher attested that LEI never had been denied access to its building space and that the space neither had been leased to nor otherwise used by anyone except LEI.

Deciding Travelers's motion on the briefs and exhibits, the district court granted Travelers summary judgment on August 13, 1992. On August 18, 1992, the court awarded Travelers damages of $746,086.95 with legal interest from the date of judgment and all costs. Both parties appeal, with LEI seeking to overturn the judgment and Travelers seeking to increase it.

## II.

### JURISDICTION AND STANDARDS OF REVIEW

The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of the district court's grant of summary judgment is *de novo. Fireman's Fund Ins. Co. v. Murchison,* 937 F.2d 204, 207 (5th Cir.1991). We must ask whether no questions of material fact exist that would bar the moving party from being entitled to judgment as a matter of law. *Schuster v. Martin,* 861 F.2d 1369, 1371 (5th Cir.1988). Our standard of review for contract interpretation is *de novo. See Matador Drilling Co. v. Post,* 662 F.2d 1190, 1197 (5th Cir.1981).

## III.

### DISCUSSION

---

[3]On July 17, 1992, Travelers moved to submit a Memorandum in Reply to LEI's Opposition to Travelers's Summary Judgment Motion on the ground that LEI's Opposition raised issues not addressed in Travelers's original memorandum. The court granted this motion on July 20, 1992.

[4]The deadline for filing of pleadings was July 17, 1992. Because Travelers had not received Maher's executed affidavit by that date, it submitted an unexecuted affidavit. On July 20, 1992, Travelers moved to substitute the unexecuted affidavit with the executed version. On July 22, 1992, the court granted the motion. We discuss the propriety of this decision below.

LEI raises three issues on appeal. First, LEI contends that summary judgment was improper because the pleadings and affidavits raised a genuine issue of material fact concerning whether Travelers had delivered possession of the leased premises. Second, LEI claims that the district court improperly considered an affidavit submitted by Travelers. Third, LEI argues that the district court erred in interpreting and applying various lease provisions. We discuss each in turn.

A. *Summary Judgment*

First, we consider LEI's contention that summary judgment was improper because there was a genuine issue of material fact concerning whether Travelers denied LEI access to the leased premises. In opposing Travelers's motion, LEI submitted president John A. Liljeberg's, Jr., affidavit, which included conclusory allegations that Travelers had not provided LEI with possession.[5] This affidavit did not indicate when or how LEI was denied possession of the premises. Responding to LEI's opposition, Travelers attached to its reply memorandum Maher's affidavit in which she attested that LEI never was denied access to its space in the building.

This exchange does not necessitate a trial on the issue of possession. When seeking summary judgment, the moving party bears the burden of showing there are no genuine factual issues such that the movant is entitled to judgment as a matter of law. The opponent must meet the movant's affidavits with opposing affidavits that set out specific facts showing an issue for trial. *See Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869, 872 (5th Cir.1978) (citations omitted). Although the Fifth Circuit has not been liberal in affirming summary judgments, "conclusory allegations supported by a conclusory affidavit will not suffice to require a trial." *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Cir.1986). This is true even if the movant cannot demonstrate contrary facts by specific affidavit recitation to rebut the conclusory affidavit. *See id.; Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1196 (5th Cir.1986); *see also Broadway v. Montgomery,* 530 F.2d 657, 660 (5th Cir.1976) (nonmovant's

[5]The statements in this affidavit concerning possession were:

> Travelers has not provided LEI with possession of the premises described by the First Proposed Lease.

> Travelers has not provided LEI with possession of the premises described by the Second Proposed Lease.

affidavit reciting unsupported, conclusory allegations insufficient to avoid summary judgment). Two opposing conclusory affidavits do not preclude summary judgment.

Under Louisiana law, "possession" is defined as the exercise of physical acts of use, detention, or enjoyment over a thing. La.Civ.Code Ann. art. 3425. Liljeberg's affidavit did not raise a genuine issue of possession. Having offered no evidence of specific acts taken by Travelers that resulted in LEI's loss of possession, Liljeberg's affidavit left open only the possibility that LEI had voluntarily surrendered possession to someone other than Travelers. This creates no genuine issue relevant to this case.

Second, we consider LEI's argument that the district court erred in allowing Travelers to submit a reply memorandum with exhibits after having submitted its summary judgment motion. Specifically, LEI maintains that the court erred in considering the Maher affidavit that was attached to the reply memorandum without affording LEI a hearing and an opportunity to object to or contradict the affidavit in a genuine issue-creating manner.

We find this procedural challenge unpersuasive. Rule 56(c) of the Federal Rules of Civil Procedure requires that the party opposing a summary judgment motion receive 10 days' notice that the matter will be taken under advisement on a certain day. *See* Fed.R.Civ.P. 56(c); *Kibort v. Hampton,* 538 F.2d 90, 91 (5th Cir.1976). It is undisputed that LEI received sufficient notice that the court would be considering Travelers's motion on a specific date and that LEI had the opportunity to respond with affidavits.

Nor was the Maher affidavit so untimely that the district court erred in considering it. Travelers's reply memorandum was submitted on July 17, 1992, with Maher's unexecuted affidavit, which it substituted with an executed affidavit five days later with the court's permission. LEI had notice of the contents of the Maher affidavit on July 17, 1992, the date Travelers moved to submit its reply memorandum. Three weeks elapsed between the submission of the executed affidavit on July 22, 1992 and the court's grant of summary judgment on August 13, 1992. LEI had ample time to object to the Maher affidavit but never did. LEI filed no motions to supplement its opposition to Travelers's summary judgment motion.

Third, we now consider LEI's argument that the court misinterpreted the lease terms. LEI argues that the district court should not have enforced the leases because, when Travelers delivered them to LEI, it already had foreclosed its mortgage and thus was no longer an "Institutional Mortgagee" entitled to enforce section 20(g) of the original leases. Under Louisiana law, a contract is read for its plain meaning. *See Ingram Corp. v. J. Ray McDermott & Co.,* 698 F.2d 1295, 1312 (5th Cir.1983). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code Ann. art. 2046. *See, e.g., Ransom v. Camcraft, Inc.,* 580 So.2d 1073, 1076 (La.Ct.App.1991). We agree with the court's interpretation of sections 20(f) and (g) and find that they provided for foreclosure by Travelers and enabled it to enforce the leases.[6] Despite foreclosure, Travelers remained an "Institutional Mortgagee."

Moreover, we find no merit in LEI's arguments that Travelers cannot invoke section 20(g) because (1) it does not contemplate a third party beneficiary, or (2) if a third party beneficiary contract was created, Travelers cannot receive the benefits because it failed to manifest its intention to receive them before the original leases were dissolved at the judicial sale. Essentially these arguments rest on those already rejected. The contracts, sensibly read, repudiate these contentions. Further, we agree with the court's interpretation of section 22(g) as allowing Travelers to collect accelerated rentals as a remedy for LEI's default.

B. *Award of Interest*

Travelers raises two issues in its cross appeal. First, it contends that it should have received

---

[6]Sections 20(f) and (g) are joined by an "and" so that they are read together to allow the Institutional Mortgagee's rights to survive foreclosure. Section 20(f) provides:

> [A]ny Institutional Mortgagee or third person purchaser at a foreclosure sale may become the legal owner or holder of this Lease by foreclosure of the Institutional Mortgage or as a result of the assignment of this Lease in lieu of foreclosure, whereupon such Institutional Mortgagee or third person purchaser shall immediately become and remain liable under this Lease, except that, as to accrued amounts payable by Lessor to Lessee under this Lease as of such date, the Lessee shall have no recourse against the Institutional Mortgagee; and....

See *supra* note 2 for text of section 20(g).

prejudgment and postjudgment interest at the contractual rate rather than only postjudgment interest at the federal legal rate. Second, Travelers argues that it was entitled to attorney fees under the lease terms.

Travelers directs our attention to section 2(c) of the leases, which provides that any rental payment not made within 10 days of the first day of the month in which it is due "shall bear a late charge equal to the highest legal interest rate allowable for each month in which payment is delinquent." Travelers reads this to mean (1) that interest began to accrue on LEI's rental obligations 10 days after default, which occurred several months prior to the district court's entry of judgment, and (2) that the "highest legal interest rate" refers to any interest that does not violate Louisiana's prohibition on usury. Travelers urges us to employ the legal rate used by Louisiana courts, which is higher than the legal rate under federal law.[7]

1. *Prejudgment Interest*

The district court awarded Travelers only postjudgment interest at the federal legal rate pursuant to 28 U.S.C. § 1961. This statute, however, has no bearing on whether Travelers is entitled to prejudgment interest. *See, e.g., West v. Harris,* 573 F.2d 873, 882 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). It does not limit successful plaintiffs to interest from the date of judgment. *See Louisiana & Ark. Ry. v. Export Drum Co.,* 359 F.2d 311, 317 (5th Cir.1966). Situations should be recognized in which a wronged party can be afforded full relief only if awarded interest from the date payment should have been received rather than from the date of judgment alone. *See, e.g., West,* 573 F.2d at 883; *Export Drum Co.,* 359 F.2d at 317. Because the lease terms provided that interest would begin accruing 10 days after the lessee's payment became due, Travelers should have received prejudgment interest as well as postjudgment interest. *See St. Tammany Manor, Inc. v. Spartan Bldg. Corp.,* 509 So.2d 424, 426-427 (La.1987) (according to La.Civ.Code Ann. art. 2038, all debts bear interest from the time they are due, unless otherwise

---

[7]Louisiana's legal interest rate is set out in article 2924(B)(3)(a) of its Civil Code. As amended in 1989, it provides that the rate of judicial interest resulting from a lawsuit pending or filed on or after January 1, 1988, "shall be equal to the rate as published annually ... in the Louisiana Register by the commissioner on financial institutions." La.Civ.Code Ann. art. 2924(B)(3)(a).

stipulated).

Next we must decide whose law to apply to determine the rate of prejudgment interest. Prejudgment interest is governed by state law in diversity cases. *Concise Oil & Gas Partnership v. Louisiana Intrastate Gas Corp.,* 986 F.2d 1463, 1472 (5th Cir.1993). A federal court with diversity jurisdiction follows the choice of law rules of the state in which it sits. *Sorrels Steel Co. v. Great Southwest Corp.,* 906 F.2d 158, 167 (5th Cir.1990). Although there is little Louisiana authority on the proper choice of law for prejudgment interest, article 3515 of Louisiana's Civil Code resolves choice of law questions for written instruments, including leases. This provision states in relevant part: "The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed." La.Civ.Code Ann. art. 3515. Moreover, the generally held view is that the interest rate for damages for breach of contract is determined by the law of the place where the contract is to be performed. *Glazer v. Glazer,* 278 F.Supp. 476, 486 (La.1968).

In this case, the leases were executed in Louisiana, and the leased property was located in Louisiana. Execution and performance of the leases occurred in the same state. Therefore, under Louisiana's choice of law rule stated in article 3515 or the principle announced in *Glazer, supra,* the result is the same. Thus, Louisiana law governs the contractual relationship of Travelers and LEI, including the issue of prejudgment interest.

In Louisiana, "[w]hen the object of performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of interest as fixed by Article 2924." La.Civ.Code Ann. art. 2000. Pursuant to this article, Travelers is entitled to prejudgment interest at the rate set out in the leases. The lease terms provided for a "late charge equal to the highest legal interest rate allowable" on delinquent rent payments. Because Louisiana law applies and because the leases failed to include a specific interest rate or method of calculation, Travelers should receive prejudgment interest under La.Civ.Code Ann. art. 2924, as this is "the highest legal rate allowable." *See Meyer v. Consolidated Mktg., Inc.,* 376 So.2d 1278, 1280 (La.Ct.App.1979) (Louisiana courts

"have consistently held that in a suit to recover amounts due on a promissory note," the interest rate stipulated in the note applies).[8]  Therefore, we remand to calculate prejudgment interest.

2. *Postjudgment Interest*

Travelers incorrectly contends that it also is entitled to *postjudgment* interest at Louisiana's legal rate rather than the federal rate.  The majority of the circuits have held that the federal *postjudgment* interest statute, 28 U.S.C. § 1961, applies to "any judgment in a civil case recovered in a district court, ... *including actions based on diversity of citizenship.*"  *Chapman & Cole v. Itel Container Int'l B.V.,* 865 F.2d 676, 689 (5th Cir.1989), *cert. denied,* 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989) (emphasis in original) (surveying cases).  The Fifth Circuit has agreed with this application of section 1961.  *See id.;  Nissho-Iwai Co. v. Occidental Crude Sales, Inc.,* 848 F.2d 613, 622 (5th Cir.1988).

However, section 1961 fixes the rate of *prejudgment* interest only when it is a federal question that must be governed by federal law.  *See, e.g., Cramer v. Association Life Ins. Co.,* 619 So.2d 821, 826 (La.Ct.App.1993).  As already noted, there is no federal statutory rate universally applicable to *prejudgment* interest.  Section 1961, therefore, is used only in the limited circumstances outlined here.

Therefore, a court with diversity jurisdiction awards prejudgment interest according to state law, which in Louisiana is the interest rate set out in article 2924 unless the parties stipulated to a different rate, but calculates postjudgment interest according to the federal rate.  *See id.* at 624.  We have addressed the issue of prejudgment interest in the preceding section.  Because the district court properly awarded Travelers's postjudgment interest, we leave that part of the judgment undisturbed.

C. *Attorney Fees*

In Louisiana, attorney fees are recoverable only where authorized by statute or contract.  *See, e.g., Quealy v. Paine, Webber, Jackson & Curtis, Inc.,* 475 So.2d 756, 763 (La.1985).  The lease provision which sets out available remedies upon the lessee's default contains three separate clauses.

---

[8]Even if the leases did not contain a provision concerning a rate of interest, Travelers nevertheless would have been entitled to prejudgment interest pursuant to La.Civ.Code Ann. art. 2924.  *See T. Cvitanovich Seafoods, Inc. v. Campo,* 617 So.2d 964, 965-66 (La.Ct.App.1993), *cert. denied,* 620 So.2d 847 (La.1993).

They are mutually exclusive.  Travelers elected to enforce the leases and accelerate the rents and may not now invoke the remaining remedies.  The district court properly refused to award Travelers attorney fees.

AFFIRMED IN PART;  REVERSED AND REMANDED IN PART FOR ENTRY OF JUDGMENT AWARDING TRAVELERS PREJUDGMENT INTEREST PURSUANT TO LA.CIV.CODE ANN. ART. 2924.